JOHN S. THOLEN, Respondent, v. THE BROOKLYN CITY RAIL-ROAD CO., Appellant.

(City Court of Brooklyn — General Term, November, 1894.)

Plaintiff's daughter, a child six and a half years old, while crossing Third avenue on a bright afternoon, stumbled and fell on the defendant's track and was run over by one of its trolley cars, in such manner that amputation of both limbs was rendered necessary. The motorman testified that he saw her from the time she left the sidewalk, twenty-three feet from the track. *Held*, that proof of these facts made out a case for the jury; that it was the duty of the motorman, on seeing the child approaching the track, to decrease the speed and get the car under control, and not to wait to do so until she had fallen on the track.

In an action for personal injuries resulting from being run over by a trolley car, it is competent and material to show by a witness, who is a motorman, within what distance a car could be stopped at the place of the accident.

A refusal to charge, in such a case, that if the evidence leaves the jury in doubt as to whether the injury was caused by defendant's negligence, the verdict must be for the defendant, is proper, as the plaintiff in a civil action is not required to prove his case beyond a reasonable doubt; that rule being applicable only to criminal cases.

A request to charge that, if the jury believed the testimony of a certain witness, they should render a verdict for defendant, is improper, as it would preclude the jury from construing the witness' testimony and determining what particular facts it established.

Proof that a child was six and a half years old and had been accustomed to go to school unattended for several months, and had been allowed to play on the street in which trolley cars were operated, is sufficient to make it a question for the jury as to whether the child was or was not *sui juris*.

City Court of Brooklyn, November, 1894.          [Vol. 10.

APPEAL from judgment in favor of plaintiff, entered upon a verdict, and from order denying motion for a new trial on the minutes.

*Morris & Whitehouse*, for appellant.

*Thomas E. Pearsall*, for respondent.

OSBORNE, J.   Plaintiff brought this action to recover for loss of services of his child Annie, in consequence of injuries sustained by her through the negligence of defendant, which resulted in the amputation of both of her legs.   Plaintiff obtained a verdict, and from the judgment entered thereon, and the order denying a motion for a new trial, defendant appeals.

It is urged by the learned counsel for the appellant that the motion to dismiss, made at the close of the plaintiff's case and renewed after all the evidence was in, should have been granted, and that the exceptions to the refusals to dismiss were well taken.   After a careful review of all the evidence, we think that these motions were properly denied.

It is not disputed that on the 8th day of February, 1893, between three and four o'clock in the afternoon, plaintiff's child was run over by one of defendant's trolley cars on Third avenue, some distance north of Sixteenth street, and suffered the injuries complained of; it is also not disputed that the child started from the gutter on the west side of Third avenue to cross the avenue; that she crossed the westerly track and had reached the west rail of the easterly track, traversing in so doing a distance in all of twenty-three feet and five inches, when she stumbled and fell on the west rail of the easterly track and was run over by one of defendant's cars traveling in a northerly direction, and was taken out from under the car, back of the hind wheels thereof, after the car had stopped.

It further appeared from the evidence on behalf of the plaintiff that the day was bright and clear; that Third avenue was unobstructed; that the child started from the west side

of Third avenue, a short distance north of Sixteenth street, in full view of the motorman; that, at the time she started, the car was south of the northerly crosswalk at Sixteenth street and Third avenue, and that she fell on the rail opposite a pole with a barber sign on it, which point is thirty-five feet four inches north of the north side of the northerly crosswalk; that, at the time she fell, she was at a distance from the front of the car variously testified to of twenty-five to fifty feet; that the car was going rapidly, and that, after it struck the child, it did not stop till it got in front of the plumber's shop, the southerly line of which was seventy-five feet from the north crosswalk at Sixteenth street, thus showing that the car traveled about forty feet after it struck the child before stopping. A witness, who had been in the employ of the defendant as a motorman, further testified that on a dry track, such as this was, a car going at the rate of ten miles an hour could be stopped within a distance of four or five feet.

We think, from this brief epitome of the plaintiff's evidence, that he made out a case which it was necessary to submit to the jury. It was clearly the duty of the motorman to keep a careful lookout in front of him, and, if he had done so, he would certainly have seen this little child traversing the space of over twenty-three feet before she reached the track he was on, and, seeing her approaching his track, it was also his plain duty to have slowed down and obtained such control of the speed of his car as would have enabled him to avoid injuring this child in case she fell, as she did in this case. *Moebus* v. *Herrmann*, 108 N. Y. 349; *Huerzeler* v. *Central Crosstown Railroad*, 139 id. 490. That the motorman did not pursue this course is plainly shown by the testimony that the car went about forty feet after striking the child before it stopped. While the evidence on the part of the defendant contradicted that on behalf of the plaintiff in many particulars, yet we think that the testimony of the motorman of the car confirmed the claim of the plaintiff as to the negligence of the defendant. This motorman testified that he saw the child when she first started from the west side to cross Third

avenue; that his car was then between the northerly and southerly crosswalks of Sixteenth street, and although he claimed that he was only going at the rate of six miles an hour, and that the child fell about four feet in front of his car, yet he also testified that his car might have moved thirty feet after striking the child before stopping, although there was a slight up grade there. A portion of his testimony is as follows: " Q. And you saw the child all the time ? A. I seen her when she started, yes. Q. And you saw her when she fell ? A. I see her when she fell. Q. Wasn't your eye on her all the time from the time she started from the mud-gutter until she fell across the track ? A. Yes; I rung the gong and I thought she would stop." In the face of such testimony it is difficult to conceive how the appellant can seriously urge that such a case was presented as made it the duty of the learned trial judge to dismiss the complaint.

The learned counsel for the appellant contends that the cases of *Fenton* v. *Second Avenue Railroad Co.*, 126 N. Y. 625, and of *Dorman* v. *Broadway Railroad Co.*, 117 id. 655, support his contention. We cannot agree with him, as the circumstances in those cases materially differed from the case now before us. In the *Dorman* case the boy was ten years old and he fell two feet in front of the carhorses while attempting to run across the track on a dark night, and the driver was unaware of his approach until he fell on the track. In the *Fenton* case the boy was nearly ten years old, and was not seen by the cardriver until he fell on the track, and it was held that the boy's death was due to his own negligence. In the present case the child was but six and a half years old, and she was seen approaching the track by the motorman in ample time for him to have slackened the speed of his car so as to have avoided injuring her, and in the case of so young a child as this one was, the motorman was bound to exercise a greater degree of caution than in the case of an adult, or of a young person of more mature years.

At folio 134 the following question was put to the witness Norkus: " Q. Say that a trolley car is going as fast as eight

miles an hour along Third avenue, between Sixteenth street and Fifteenth street, going north, within what distance could you stop that car? [Objected to, as incompetent, irrelevant and immaterial. Objection overruled and defendant excepts.]"
We fail to see why the question was objectionable. The witness had worked as a motorman for defendant about a year, was familiar with the locality of the accident, was there shortly after it occurred and examined the track, and testified "that he had occasion to stop the car suddenly often; very often;" he was competent, as an expert, to answer the question put to him, and it was material for plaintiff to show, if he could, that the motorman of the car in question was not vigilant in promptly stopping his car. After the charge to the jury the learned counsel for the appellant requested the court to charge "that if the evidence leaves the jury in doubt as to whether the plaintiff's child was injured through negligence on the part of the motorman, the defendant is entitled to the benefit of that doubt, and their verdict must be for the defendant," to which the court responded: "I decline so to instruct the jury; that is not the rule in a civil case. The rule is, that the plaintiff is bound to make out his case, by a fair preponderance of evidence, to the satisfaction of the jury, and not beyond a reasonable doubt; that is the rule in a criminal case," to which defendant's counsel excepted. We think that the learned trial judge was correct in his ruling, and it is amply sustained by authority. *New York Guar. & Ind. Co.* v. *Gleason,* 7 Abb. N. C. 334, 352; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.,* 95 N. Y. 568. In this latter case the court, Chief Justice RUGER, says, at page 569: "We are not aware of any rule applicable to the trial of issues of fact in civil actions which requires a party upon whom the burden of proof rests to establish a case free from reasonable doubt. In criminal cases, the law, out of tender regard for the rights of accused persons, and the presumption of innocence which always attaches to persons in that situation, gives to the defendant the benefit of any reasonable doubt existing as to his guilt; but in civil actions, unless the issue involves the commission of a crime by some of the

parties thereto, the application of such a rule is, we think, unauthorized by the law of evidence. \* \* \* The rule is concisely stated in 3 Greenleaf's Evidence (§ 29) as follows: 'A distinction is to be noted between civil and criminal cases in respect to the degree or quantity of evidence necessary to justify the jury in finding their verdict for the government. In civil cases their duty is to weigh the evidence carefully and to find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt; but in criminal cases the party accused is entitled to the benefit of the legal presumption in favor of innocence, which, in doubtful cases, is always sufficient to turn the scale in his favor.'" In the request made by appellant's counsel it will be noticed that it does not apply to a "reasonable doubt," but merely to "doubt." The court was further asked to charge the jury "That if they believed the testimony of the witness Warncke they should render a verdict for the defendant," and exception was taken to the refusal so to charge. The exception was not well taken, for the reason that it precluded the jury from construing the testimony in question and determining what particular facts it did establish. *Dolan* v. *Del. & H. C. Co.,* 71 N. Y. 285; *McGrath* v. *Met. Life Ins. Co.,* 6 N. Y. St. Repr. 376; *Gerding* v. *Haskin,* 2 Misc. Rep. 172.

Exception was also taken to the refusal to charge "That the plaintiff was *non sui juris,* incapable of appreciating or guarding against the danger incident to crossing a street on which surface cars were operated, and it, therefore, became the duty of the father and mother to use reasonable care to prevent her *going* unattended on such a street." This request was properly refused. The learned trial judge had already fully charged the law on this question, and had left it for the jury to determine if this child was *sui juris* or *non sui juris,* and no exception was taken thereto. It had been shown that the child was six and a half years old, and had been accustomed to go to school unattended since the previous September, and had been allowed to play out in the street in front of her home, where there was a line of trolley cars in operation. We

think this was sufficient to make it a question for the jury to determine whether the child was or was not *sui juris*. *Mangam v. Brooklyn Railroad Co.*, 38 N. Y. 455.

Exception was also taken, to the refusal to charge the following request : " If the plaintiff's child fell upon the track within twenty feet or less of the approaching car, and the motorman turned off his power, put on his brake as soon as he could and as hard as he could and stopped the car, the defendant is not liable." This request was improper in that it limited the man's efforts to stop the car to the moment when the child fell on the track. The motorman had admitted, as above stated, that he saw the child start to cross Third avenue, and it was his duty, as he saw her then approaching his track, to decrease his speed and get his car under control, and not to wait to do so until she had fallen on the track in front of him.

The foregoing constitute all the exceptions that were taken on the trial to which our attention is called in the brief of the learned counsel for the appellant, and, as we find that none of them were well taken, we are of the opinion that the judgment and order denying the motion for a new trial should be affirmed, with costs.

VAN WYCK, J., concurs.

Judgment and order affirmed, with costs.