# INDIANAPOLIS STREET RAILWAY COMPANY
## v. SEERLEY.

[No. 5,030. Filed October 28, 1904. Rehearing denied January 11, 1905. Transfer denied May 12, 1905.]

1. APPEAL AND ERROR.—*Motion to Remand.*—*Ground for New Trial.*—*Assignment on Appeal.*—The overruling of a motion to remand a cause to the court from which a change of venue had been taken, is a ground for a new trial, and can not be assigned independently as error on appeal. p. 471.

2. PLEADING.— *Complaint.*— *Jurisdiction.*—*Want of.*— *Demurrer.*— A demurrer to a complaint for want of jurisdiction over the subject-matter will be overruled unless the want thereof appears upon the face of the complaint. p. 471.

3. TRIAL.—*Instructions.*—*Negligence.*—*Results of.*—An instruction in a negligence case which states that the ordinary care to be used "is required to be in proportion to the danger to be avoided and the fatal consequences that might result from the neglect" is not erroneous. p. 471.

4. STREET RAILROADS.—*Negligence.*—*"Last Clear Chance."*—*Duty of Motorman to Observe.*—It is the duty of a motorman of a street car to exercise ordinary care in watching for persons or vehicles on the track, and if he sees, or by the exercise of ordinary care could have seen, any one in a position of danger, he should stop his car to avoid injury, otherwise the street railway company is liable. p. 472.

5. TRIAL. — *Interrogatories.* — *Answers.* — *Negligence.* — *"Last Clear Chance."* — *Knowledge.* — Where the answers to the interrogatories show that the motorman of a street car saw plaintiff's perilous situation in time to avoid a collision, an instruction that actual knowledge of such peril was not necessary to render the street railroad company liable is harmless, even if erroneous. p. 473.

6. EVIDENCE. — *Expert.* — *Distance Required to Stop a Street Car.* — The distance required in which to stop a street car by the use of the brakes is a proper subject for expert testimony. p. 473.

7. SAME.—*Ordinary Care.*—*What Is.*—*Witness May Not State.*—A witness can not testify what is or what is not ordinary care, such question being exclusively for the jury. p. 474.

8. SAME.—*Ordinary Care.*—*Distance to Stop Car.*—Evidence as to the distance required to stop a street car is not objectionable as an invasion of the province of the jury as to the question of what is ordinary care. p. 474.

9. TRIAL.—*Interrogatories.*—*Negligence.*—*Contributory.*—*Street Railroads.*—Where the answers to the interrogatories show that plaintiff's

horse took fright and shied onto the street car track without any negligence on plaintiff's part; that defendant's motorman, 200 feet away, saw the horse approaching; that he could have stopped his car within 35 feet; that when 40 feet away he knew that plaintiff could not get off the track; that he did not do what he reasonably could to stop the car, such answers neither show freedom from negligence on the part of the street railroad company, nor contributory negligence on the part of plaintiff.  p. 475.

10. STREET RAILROADS. — *Driver on Track.* — *Negligence.* — *Contributory.*—*Question for Jury.*—The questions of the negligence of a street railroad company and the contributory negligence of a driver on the track, where the evidence is capable of diverse inferences and conclusions, are for the jury.  p. 476.

From Shelby Circuit Court; *Douglas Morris,* Judge.

Action by Joseph Seerley against the Indianapolis Street Railway Company. From a judgment on a verdict for plaintiff for $3,500, defendant appeals. *Affirmed.*

*F. Winter, Hord & Adams* and *W. H. Latta,* for appellant.

*Wymond J. Beckett,* for appellee.

COMSTOCK, J.—This action was brought to recover for personal injuries, and was begun by the filing of a complaint against the appellant in the Superior Court of Marion County. The damages alleged to have been sustained were suffered on account of injuries to appellee's wife, thereby depriving him of her services. The accident happened on the 9th day of May, 1900. A buggy driven by appellee, in which he and his wife were riding, collided with a street car on Massachusetts avenue, in the city of Indianapolis.

The complaint upon which the case was tried was an amended complaint, filed after the case had been venued to Shelby county. The allegations are as follows: "That on or about May 9, 1900, defendant was operating one of its electric cars over and upon Massachusetts avenue, a public highway of the city of Indianapolis, Indiana, and said car was in charge of and controlled by defendant's servants

and employes, and acting in the line of their employment at the time of the accident to this plaintiff, hereinafter described; that said car was running southwest on the north track of defendant's double line of railway in said Massachusetts avenue, and said plaintiff was riding in a one-horse vehicle with his wife, Ruth Seerley, also southwest in and upon said Massachusetts avenue, and north of said defendant's said north track, in the roadway of said avenue; that about half way between the points where East and Liberty streets intersect said avenue the horse drawing the vehicle in which this plaintiff and his said wife were riding shied to the south, and ran upon said north track of defendant's said railway, all without fault or negligence of this plaintiff or his said wife; that when said horse drew said vehicle upon said north track as aforesaid, and while said vehicle was upon said track, and before this plaintiff could remove said horse and vehicle from said track in the exercise of due care, defendant's servants and agents in charge of and controlling and operating said car negligently approached with said car this plaintiff's said horse and vehicle upon the same said track, and negligently ran said car against said vehicle and horse upon said track, and negligently collided with, struck and crushed said vehicle, and negligently threw and hurled this plaintiff's wife from and out of said vehicle with great force and violence upon the hard street and stones, and negligently injured the plaintiff's said wife, without fault or negligence on her part or negligence on the part of the plaintiff; that when this plaintiff's horse shied and ran upon the track of this defendant as aforesaid, and at all times while said vehicle and horse were upon said track, they were in plain view of defendant's motorman in charge of said car, and said motorman could and did see plaintiff's said horse upon said track; and after said horse and vehicle came upon said track as aforesaid said motorman could have stopped said car, in the exercise of due care, before striking said vehicle,

but negligently failed to do so, and negligently ran said car against said vehicle, and thereby negligently injured said plaintiff's wife."

A demurrer to this complaint was filed upon four grounds: (1) That it did not state facts sufficient to constitute a cause of action; (2) that the court had no jurisdiction of the person of the defendant; (3) that the court had no jurisdiction of the subject-matter; (4) that there was another action pending between plaintiff and defendant for the same cause of action. The demurrer was overruled, and the defendant filed an answer in general denial.

The amended complaint on which the case was tried was filed in the Shelby Circuit Court on the 7th day of November, 1902, being the twenty-ninth judicial day of the October term of said court. On the 22d day of December, 1902, which was the first judicial day of the December term of said Shelby Circuit Court, the defendant entered a special appearance, and filed its written motion to remand the cause to the Superior Court of Marion County, for the reasons stated in said motion, as follows: "(1) That on the 23d day of May, 1902, being the seventeenth judicial day of the special term of said court, the plaintiff filed his affidavit for a change of venue in this cause, and said motion was sustained, and said cause was sent to the Shelby Circuit Court, but the transcript in said cause was not filed in the Shelby Circuit Court until the 7th day of October, 1902, and said change of venue was not perfected within the time limited by the court. (2) That on the 23d day of May, 1902, the plaintiff filed his motion in the Superior Court of Marion County, where this cause was then pending, for a change of venue from said Marion county, which motion was, by the court, sustained, and the venue of said cause was changed to the Shelby Circuit Court, and twenty days were given plaintiff within which to perfect said change; and afterwards, on the 13th day of June, 1902, being the eleventh judicial day

of the June term of said court, the plaintiff voluntarily appeared in said court after the time limited for perfecting said change, and appeared in said action, and filed his substituted complaint therein."

The motion was overruled and exception taken. The trial resulted in a verdict and judgment for $3,500 in favor of appellee. The jury returned with the general verdict answers to interrogatories.

The errors relied upon in this court arise upon the rulings, respectively, of the court on the demurrer to the amended complaint, on the motion to remand, on the motion for judgment on the special answers to interrogatories, and on the motion for a new trial.

1. The action of the court in refusing to remand is presented only by a separate specification of error. It should have been made a reason for a new trial. *Sidener* v. *Davis* (1882), 87 Ind. 342; *Bogue* v. *Murphy* (1902), 29 Ind. App. 292; *Citizens St. R. Co.* v. *Shepherd* (1902), 29 Ind. App. 412.

2. It is not claimed that the complaint does not state a cause of action, but that the demurrer should have been sustained because the trial court had no jurisdiction to try the cause. Demurrer for this cause will only lie when the defect appears upon the face of the complaint. It does not so appear. The demurrer was therefore properly overruled. *Eel River R. Co.* v. *State, ex rel.* (1896), 143 Ind. 231.

3. Appellant complains of the fifth and seventh instructions given to the jury. The fifth is as follows: "The law interprets care to be that degree of care which a person of ordinary prudence, under the particular circumstances, is presumed to exercise to avoid injury. Such care is required to be in proportion to the danger to be avoided and the fatal consequences that might result from the neglect." Against this instruction it is said that the jury had no right to consider the fatal consequences which might result from the neglect of any act. If care is to be exercised in propor-

tion to the danger to be avoided—as has many times been held—there can be no error in the concluding part of the sentence, "and the fatal consequences that might result from the neglect." Ordinary care is defined in the above language in the following opinions: *Toledo, etc., R. Co.* v. *Goddard* (1865), 25 Ind. 185; *Louisville, etc., R. Co.* v. *Schmidt* (1897), 147 Ind. 638; *Illinois Cent. R. Co.* v. *Cheek* (1899), 152 Ind. 663.

4. Said seventh instruction is as follows: "The law casts upon persons in charge of a street car the duty of vigilance in observing the tracks ahead of their cars and of avoiding danger by collision with persons on the track; and to avoid inflicting injury to a person upon the track in a dangerous position the car must be stopped, if there is time so to stop it, in the exercise of ordinary care, after the danger is observed, or should have been observed in the exercise of ordinary care. And in this case, if you shall find that there was time, in the exercise of ordinary care, for the motorman to have stopped the car after seeing, or after he was bound to see, in the exercise of ordinary care, the dangerous position of the plaintiff's wife upon the track ahead of the car, if you find she was in said position, and that he failed to exercise such care to check the speed of the car, but ran the car against said vehicle in which the plaintiff's wife was riding, and injured her as alleged in the complaint, then you are at liberty to find that the defendant was guilty of negligence in the premises."

The objection made to this instruction is that it attempts to state the theory of the "last clear chance," and that under the decisions of this State the peril must be actually known to the motorman before he can be held negligent upon that theory; citing *Cleveland, etc., R. Co.* v. *Klee* (1900), 154 Ind. 430; *Dull* v. *Cleveland, etc., R. Co.* (1899), 21 Ind. App. 571; *Krenzer* v. *Pittsburgh, etc., R. Co.* (1898), 151 Ind. 587, 68 Am. St. 252; *Louisville, etc., R. Co.* v. *East Tenn., etc., R. Co.* (1894), 60 Fed. 993, as reviewed in

*Krenzer* v. *Pittsburgh, etc., R. Co., supra,* page 593; *Louisville, etc., R. Co.* v. *Phillips* (1887), 112 Ind. 59, 2 Am. St. 155. The instruction correctly states the duty of the motorman. *Indianapolis St. R. Co.* v. *Darnell* (1904), 32 Ind. App. 687; Nellis, St. Surface Railroads, 299, and cases cited; *Citizens St. R. Co.* v. *Damm* (1900), 25 Ind. App. 511; *Elwood St. R. Co.* v. *Ross* (1901), 26 Ind. App. 258.

5. But the particular point made by appellant that the peril must be actually known to the motorman is fairly met by the answers to interrogatories sixty-five and seventy. "(65) Did said motorman see the movement of the horse and surrey in the direction of the track as soon as they began to move toward the track? A. Yes." "(70) How many feet was the front end of defendant's car back of the left front wheels of the surrey at the time said surrey first began to turn toward the track? A. 200 feet." These findings show actual knowledge of imminent peril, so that as to the criticism made the instruction, even if erroneous, was harmless. *Indianapolis St. R. Co.* v. *Brown* (1904), 32 Ind. App. 130.

6. Upon direct examination Arthur. H. Shelby, a witness for appellee, who had shown himself qualified to testify as an expert, was asked the following question: "Mr. Shelby, suppose a car is running on the track of the defendant along between the points I have stated at the rate of ten or twelve miles an hour, you may state in what distance that car could be stopped in the exercise of ordinary care by means of the brake alone." The court having overruled an objection of appellant to this question, the witness answered: "Why, a car could be stopped in fifty feet with the brake, running at that speed." Defendant's motion to strike out the answer was overruled, and exceptions to these rulings taken. The distance within which a car in motion may be stopped by the use of the brake is a question upon which an expert may properly give an opinion. The dis-

tance within which a car could be stopped by the use of a brake was only one of the questions to be determined by the jury. *Tholen* v. *Brooklyn City R. Co.* (1894), 30 N. Y. Supp. 1081; *Pender* v. *Brooklyn City R. Co.* (1895), 32 N. Y. Supp. 366; *McDonald* v. *Brooklyn Heights R. Co.* (1900), 64 N. Y. Supp. 480; *Indiana, etc., Coal Co.* v. *Buffey* (1901), 28 Ind. App. 108, and cases cited; Rogers, Expert Testimony (2d ed.), §104; Lawson, Expert and Opinion Ev. (2d ed.), p. 94.

7. It is claimed that the effect of this evidence was to prove what was ordinary care, and that a witness could not be allowed to state an opinion or conclusion upon a question of ordinary care, because it is for the determination of the jury. *Louisville, etc., R. Co.* v. *Sparks* (1895), 12 Ind. App. 410; *Githens* v. *McDonnell* (1900), 24 Ind. App. 395; *Chicago, etc., R. Co.* v. *Cummings* (1900), 24 Ind. App. 192; *Lake Erie, etc., R. Co.* v. *Juday* (1898), 19 Ind. App. 436. We concede the proposition, and the cases cited hold, that whether ordinary care has or has not been exercised is for the jury and not for a witness, and that a witness can not be permitted to testify to what is ordinary care.

8. But in determining the purpose and effect of this question it is proper to look at all that the witness has testified to upon the particular subject. The language of the question certainly gives the impression that it only seeks to elicit the opinion as to the distance within which a car can be stopped by the use of the brake alone. The answer shows that the witness so understood the question. Upon cross-examination the witness was interrogated as follows: "Do you mean a test stop—for a man to begin at a certain moment to make a test stop? A. Running at that speed. I say you mean a test stop, do you? A. I mean a good stop; yes, sir. You mean, a man knows just where he has to begin to stop, and then tries to make a stop as quick as he can. Is that the idea? A. To make that stop; yes, sir.

That would make a good stop." And further the witness testified in reference to an ordinary stop with the brake: "When you come along and make an ordinary stop at a street crossing for passengers don't you begin to stop 150 feet before you get to the crossing? A. Well, it depends on the crossing and how—— Answer the question. Do you or do you not? A. If I am behind or late or early? If I am ahead of time I take more time, but if I am late I take less time. But ordinarily, if you are running along in the ordinary manner, and you make a stop for passengers, don't you begin 150 or 250 feet? A. Yes, to make a slow stop. That is, to stop with a brake? A. Yes, sir; to stop with the brake—that is, not for an accident." The witness manifestly intended and could only reasonably have been understood as giving his opinion as to the distance within which a car could be stopped under certain conditions. So viewed the testimony was not prejudicial to the appellant.

9. It is contended that the answers to interrogatories affirmatively show that the appellant was not guilty of negligence. This claim is founded upon the following facts found: When the horse first turned toward the track the motorman sounded his gong. Interrogatory seventy-one. Up to that time everything was clear in front, and no indication of danger. Interrogatories fifty-five and fifty-six. The motorman was in proper position, running moderately, paying attention, and everything about the car was in good condition. Interrogatories fifty-seven, fifty-nine, sixty-one, sixty-two and sixty-four. The motorman could first have known when the car was forty feet from the buggy that it would not get off the track. Interrogatory one hundred and seventeen. The shortest distance within which that car could possibly have been stopped, by the utmost care and judgment, was thirty-five feet. The whole thing was very quickly done.

In this connection it is proper to remember that the complaint only charges negligence against the appellant after

the horse and vehicle were upon appellant's track. The answers show that the surrey was turned toward said track by the horse suddenly becoming frightened at some object, not shown by the evidence, on the street; that he shied and turned quickly toward the appellant's car track; that appellee pulled on his lines to prevent the horse from going upon or in the direction of the track after he became frightened, and did all he could to pull him off the track after he had gotten upon it; that the motorman saw the movement of the horse and surrey in the direction of the track as soon as they began to move toward the same; that the front end of appellant's car was 200 feet back of the left front wheel of the surrey at the time said surrey first began to turn toward the track; that the motorman then sounded the gong, but did not apply the reverse current of electricity until after the horse had been pulled off of the track. It is also found that reversing the electric current is the quickest way to stop; that the motorman could have stopped the car sooner than he did had he applied the brake also; and it is further found that the motorman did not do what reasonably occurred to him to prevent the accident; that he did not succeed in checking the speed of the car before it struck the surrey; that the car was not so close to the surrey at the time that it could not have been brought to a complete stop before reaching the point of collision.

The general verdict finding that the motorman failed to exercise the care of an ordinarily prduent man is not overthrown by the special answers. The facts found do not show appellee guilty of contributory negligence. They are certainly not in irreconcilable conflict with the general verdict, which finds him free from contributory negligence, and so, under the rule, the general verdict must prevail. There is evidence to support it.

10.    We may concede that under the circumstances—the suddenness with which the horse became frightened and turned toward the track, the conduct of appellee and of the

motorman—the question of the negligence of each of them is a close one; but we are of the opinion that such question was for the jury, and was properly submitted to them. We have passed upon the questions discussed, and find no reversible error.

Judgment affirmed.

## On Petition for Rehearing.

Per Curiam.—A rehearing is asked upon the grounds that the original opinion holds that the seventh instruction, given to the jury by the court, was not erroneous, and that a certain question propounded to the witness Shelby was erroneously held to be proper. Upon reference to said instruction it will appear that it attempts to state the theory of "last clear chance." It is claimed now, as in the original brief of appellant, that, the peril must be actually known to the motorman before he can be held negligent on that theory.

Upon this question, in 2 Thompson, Negligence (2d ed.), §1476, that author says: "There is scant propriety in admitting this doctrine in the case of steam railroads at places other than highway crossings, and at places where their tracks do not traverse the surface of public streets or highways. * * * But with respect to street railroads, where the public have the right to use the street, including that part of it on which the track is laid, in common with the railroad company, and where the railroad company is consequently bound to anticipate the rightful presence of men, women and children on its track in front of its cars, the sound and just rule must be different. * * * It has the effect of absolving the street railway company from keeping that constant lookout ahead and around which, as already seen, the law demands of corporations which have received from the public a license to propel cars at a high rate of speed along the surface of the highway, in populous

districts, which the public have a right to use in common with them." So that if the instruction was not harmless, as stated in the opinion, by reason of the special findings, still the giving of it was not error.

As to the admission of the testimony of the witness Shelby, we do not deem it necessary to add to the original opinion.

Petition for rehearing overruled.