Indianapolis Street Railway Company *v.* Hackney, by Next Friend.

[No. 5,710. Filed May 17, 1906. Rehearing denied November 27, 1906. Transfer denied January 17, 1907.]

1. Appeal.—*Briefs.*—*Waiver.*—Alleged errors not discussed on appeal are waived. p. 374.

2. Trial. — *Instructions.*—*Street Railroads.*—*Negligence.*—*Last Clear Chance.*—An instruction that it is the duty of a street railroad company to avoid inflicting injuries to persons on or near its track, and for its motorman to stop its car where danger is observed, or where such danger should be observed in the exercise of ordinary care, is not erroneous. p. 375.

3. STREET RAILROADS.—*Failure to Stop Cars.—Collisions.—Liability.*—Where the motorman of a street-car saw plaintiff's wagon obstructing the track and without waiting until plaintiff could get off, ran his car against such wagon, inflicting injuries to plaintiff, such company is liable. p. 375.

4. TRIAL.—*Instructions.—Street Railroads.—Speed of Cars.*—An instruction as to the proper rate of speed of a street-car in a city is not harmful to the company, where the evidence shows that just before the injury the car was standing still and the motorman saw plaintiff's wagon on the track and voluntarily ran into it, causing the injuries. p. 376.

From Hancock Circuit Court; *Edward W. Felt,* Judge.

Action by Oliver Hackney, by his next friend, against the Indianapolis Street Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. Winter, Marsh & Cook, Payne & Oberreich* and *W. H. Latta,* for appellant.

*W. J. Beckett,* for appellee.

ROBY, C. J.—Action by appellee. Verdict and judgment against appellant for $2,000. Motion for new trial overruled. Errors assigned are that neither paragraph of the complaint contains facts sufficient to constitute a cause of action, and that the court erred in overruling the motion.

The complaint is in two paragraphs. In the first it is averred that the appellant operated its cars in Indianapolis, and had on December 6, 1902, a double track on Washington street, in said city, and also upon Pennsylvania street, an intersecting street, its cars being propelled over the same by electricity; that appellee was driving his team, hauling dirt away from the side of Washington street, near the corner of Pennsylvania street; that he was upon appellant's track in plain view of its motorman in charge of its car; that appellee was unable to remove his horse and wagon from said track because of a large pile of dirt and of other wagons in said street; that the motorman could see, and did see, that appellee was unable to remove said horse and wagon from said street, and could see, and did

see, that if he proceeded with said car on said track it imperiled appellee, but he did, nevertheless, negligently run said car against said wagon after he saw and knew that appellee could not remove said wagon and horse from said track, and after he knew appellee's peril, and did negligently strike said wagon with said car, thereby inflicting personal injuries on appellee, which are set out in detail. The second paragraph avers that said motorman in charge of appellant's car wilfully and intentionally ran said car against appellee's wagon with the purpose and intention wilfully and purposely to injure appellee; that by reason thereof appellee was injured as set out, to his damage.

No objection to the sufficiency of the complaint is pointed out, and the assignments relating thereto are therefore waived. The reasons for a new trial which are

1. argued relate to the giving of instructions three, nineteen, twenty and twenty-two.

.It is in evidence that an excavation was being made at the corner of Pennsylvania and Washington streets for the purpose of sinking a main heating pipe and a conduit for electric light wires. There was a pile of dirt which came within fifteen or eighteen inches of the street railway track, piled up five or six feet high. A number of teams were engaged in hauling the dirt away as rapidly as it could be loaded, driving the wagons in over the car tracks during the intervals between cars. Appellee, on account of the teams ahead of him, was unable to get his wagon in such a position that the approaching car would clear it. The wheels of the wagon were not upon the track, but the rear wheels were near to it. The motorman of the approaching car rang the bell once, and called to the appellee, saying: "Get out of here or I'll knock you out." The witness, a watchman, said to the motorman: "He will be out in one minute, as soon as the team can pull out." The motorman reiterated his statement, "and he acted like he was a little excited or mad." The further details were stated by this

witness as follows: "I says, 'Just in a minute. He will get out as soon as the team starts.' The team had started out. The young man went to get on his wagon, hardly got on. He made the remark—he said, 'Well, I will fix him' [using an indecent term] and pulled the car wide open, and it struck it and it wrecked it. It knocked the seat all to pieces and throwed him. And it kept coming. And I grabbed the team. I seen he was like to get run over. And. I grabbed the team and they drug me a piece. And when it went over it turned completely over and tore the gravel bed loose, I know, slats and all; turned it right over; right straight out on the wheel over next to the car. And he landed at the hind end of the car where we got the team stopped, till he was taken off or fell and was pitched then at the hind end of the platform by the platform, part of him laying on it and the balance hanging. And when he was moved off by these men I got the team away entirely. A man helped me to hold them and another man turned the wagon back because the double-trees was up; the horses was hard to hold, the excitement, rattle, and the crash, you know, and the like."

In the third instruction the jury were told that it was the duty of appellants to avoid inflicting injury upon a person in a dangerous position on its track, and to stop its car, if there is time to stop it in the exercise of ordinary care, after the danger is observed, or should have been observed in the exercise of ordinary care. That was a correct statement of law. *Indianapolis St. R. Co.* v. *Seerley* (1905), 35 Ind. App. 467.

Whether there is time to stop a car under such circumstances is, of course, dependent upon the attendant conditions. Under the evidence of this case there is no room for controversy on the subject.

The nineteenth instruction is criticised upon the authority of *Indianapolis St. R. Co.* v. *Taylor* (1905),

164 Ind. 155. Inasmuch as it is shown by the evi-
4.  dence that the car was standing still immediately
before the collision, an instruction relative to the
rate of speed at which cars may be operated in the exercise
of due care could not harm appellant.    The twentieth in-
struction stated the law correctly.    *Indianapolis St. R. Co.
v. O'Donnell* (1905), 35 Ind. App. 312; *DeLon v. Kokomo
St. R. Co.* (1899), 22 Ind. App. 377; *Indianapolis St. R.
v. Tenner* (1904), 32 Ind. App. 311.    Objection to the
twenty-second instruction is that it assumes as true certain
disputed material facts.    The language of the instruction
did not justify the contention.

There was no error in the other instructions com-
plained of.

Judgment affirmed.