## Lake Erie and Western Railway Company v. Pence.

[No. 2,914.  Filed January 26, 1900.]

APPEAL AND ERROR.—*Waiver.*—Specifications of error which are not discussed are deemed waived. *p. 13.*

PLEADING.—*Railroads.*—*Injury at Crossing.*—A complaint in an action against a railroad company for personal injuries, alleging that plaintiff was struck by defendant's train when the same was being run at a rate of speed in violation of the city ordinance, and by reason of the premises plaintiff was damaged, sufficiently shows that it was by reason of such negligence that he was damaged. *pp. 13-15.*

RAILROADS.—*Injury at Crossing.*—*Contributory Negligence.*—Plaintiff cannot recover for an injury received at a railroad and highway crossing where it appeared that he voluntarily went upon the track after he saw the approaching train in time to stop in a place of safety, although the train was being run at a rate of speed in violation of a city ordinance. *pp. 15-21.*

From the Boone Circuit Court. *Reversed.*

*J. B. Cockrum, C. M. Zion, S. M. Ralston, M. Keefe, C. G. Guenther, B. Clark* and *W. E. Hackedorn,* for appellant.

*A. H. Boulden, F. C. Reagan* and *J. T. Hockman,* for appellee.

COMSTOCK, J.—This action was for injury to appellee's person, and the wagon in which he was riding, caused by a collision with appellant's locomotive and train of cars at a crossing of a public highway in the city of Frankfort, Indiana. A trial resulted in a verdict and judgment in favor of appellee for $800.

The amended complaint consisted of six paragraphs. On entering upon the trial, appellee dismissed as to the third and fourth. Specifications in the assignment of errors from one to ten, inclusive, question the sufficiency of each paragraph, but the sufficiency of the fifth and sixth only is discussed. As to the first and second, the alleged error, under the rule, is therefore waived.

It is insisted by appellant's counsel that the "demurrer should have been sustained, for the reason that it is not shown in these paragraphs that the act of negligence complained of was the proximate cause of the injury. The negligence complained of in these paragraphs was the violation of an ordinance of the city of Frankfort regulating the speed of trains running through that city." In each of the four paragraphs it is, in substance, alleged that the appellant owned and operated a line of railroad extending through Clinton county, and the city of Frankfort, over which the appellant operated its trains; that the railroad

crosses one of the public thoroughfares in the city of Frank-
fort, known as East street; that on the 22nd of October,
1897, as the appellee was crossing appellant's railroad track
at the intersection of East street, exercising due care and
caution to avoid any injury, the appellant, by itself, agents,
servants, and employes, carelessly and negligently ran its
locomotive engine and train of cars against the appellee's
wagon with such violence that the appellee was permanently
injured thereby, showing the character of the injuries and
the damages sustained thereby, with the further allegation
that the injury was caused without any fault or negligence
of the appellee. In addition to the foregoing facts it is averred
in the fifth and sixth paragraphs that there was at the date
of the accident, in force, an ordinance passed by the common
council of the city of Frankfort, November 27, 1889, regu-
lating the speed of trains within the corporate limits of the
city, and making it unlawful for any railroad train to be
run through the city at a higher rate of speed than four
miles an hour, followed by the allegation that the train was
being run at a higher rate of speed than that permitted by
the ordinance..

To quote the concluding part of the fifth paragraph,
which does not materially differ from that of the sixth, it
is alleged: "That the defendant did then and there in
violation of said ordinance, as aforesaid, by itself, agents,
servants, and employes carelessly and negligently run its
locomotive engine and cars against plaintiff's wagon with
great force and violence, by which said wagon in which the
said plaintiff was situated was thrown from said highway
and said plaintiff was thrown against a telegraph pole with
great force, and was bruised, wounded, and permanently
injured thereby; and that he also sustained from such ac-
cident a great mental and physical shock, pain, and mental
anguish, from all of which injuries he has not yet recovered,
and may never recover,—all of which was without any fault

or negligence on the part of the plaintiff. That by reason of the premises plaintiff has been damaged in the sum of $1,999, for which he demands judgment, and all proper relief." This sufficiently avers that the negligent running of the train in violation of the ordinance caused the injury for which appellee sued, and that it was by reason of such negligence that he was damaged. It is clearly sufficient to withstand a demurrer under *Chicago, etc., R. Co.* v. *Spilker*, 134 Ind. 380; but, see, also, *Ohio, etc., R. Co.* v. *Engrer*, 4 Ind. App. 261; *Indianapolis, etc., R. Co.* v. *Kelley*, 23 Ind. 133; *Cincinnati, etc., R. Co.* v. *Chester*, 57 Ind. 297; *Cleveland, etc., R. Co.* v. *Wynant*, 100 Ind. 160; *Louisville, etc., R. Co.* v. *Jones*, 108 Ind. 551.

It is next contended by counsel for appellant that the court erred in overruling its motion for a new trial, "because the evidence shows that appellee was guilty of contributory negligence." The consideration of this question necessitates an examination of the evidence. The record shows that the Lake Erie & Western Railroad runs through the city of Frankfort in a general easterly and westerly direction, and parallel to and on the north side thereof runs the track of the Toledo, St. Louis & Kansas City Railroad, there being but about ten feet between the two tracks. In the eastern part of the city of Frankfort these tracks are crossed at right angles by Clay street, running north and south. Clay street is fifty feet in width, graded and graveled, and laid with sidewalks on each side. The crossing of this street with the railroad is planked the entire width of the street from lot line to lot line, and the entire width of the two railroads, including the space between. One hundred and thirty-two feet south of the center of the Lake Erie & Western Railroad track, Clay street is crossed diagonally by Washington avenue, running in a southwesterly and northeasterly direction, and crossing the tracks of these rail-

roads about 260 feet east of the crossing of the railroads and Clay street. The train that caused the injury approached the Clay street crossing from the east, and the appellee approached the said crossing from the south on Clay street. On the east side of Clay street, between the crossings of the railroads and Washington avenue with said street, the view of a traveler is obstructed by a dwelling and a small outhouse. These buildings are along and immediately adjoining Clay street. The south side of the dwelling is forty feet north of the intersection of Clay street and Washington avenue, and the north side of said building is twenty-two feet and eight inches from the south rail of the appellant's track. This building is a story and a half high. Immediately north of the house, and about three feet from it, is a small outhouse, about four and one-half feet square and about seven feet high, and stands fifteen and one-half feet south of the south rail of the track. One going northeast on Washington avenue at the crossing of said avenue and Clay street has a plain view of the appellant's track where the same crosses Washington avenue about 280 feet northeast of the said point of observation. And as one goes north on Clay street from its intersection with Washington avenue for a distance of thirty-five or forty feet, or until the view is obstructed by the dwelling-house on the east side of Clay street, looking east by the angle thus formed, he can see along the Lake Erie & Western Railroad track east of the Washington avenue crossing to the center of East street, which point is a distance of 640 feet east of Clay street crossing with the railroad. One approaching the railroad from the south on Clay street, when within sixteen feet of the track, would have a full view of the railroad track looking east for a distance of 326 feet, with a partial view for a distance of 556 feet. One within ten feet of the track, looking east, would have a full view thereof for a distance of 1,200 feet. On the 22nd of October, 1897, about 4 o'clock in the afternoon, the appellee

was driving east on Washington avenue, and, when he reached the crossing of Washington avenue and Clay street, turned north into Clay street. When he turned from Washington avenue into Clay street, about 132 feet south of the railroad crossing, he heard a noise, and thought it a whistle of an engine. Believing that it was past time for the regular train on the Lake Erie & Western Railroad, he thought the whistle was that of a train on the Toledo, St. Louis & Kansas City Railroad. The appellee was driving a team of two horses hitched to a large moving car with a canvas top and side curtains rolled up close to the top, so as to leave an unobscured view. The wagon was so constructed that the bottom of the bed in front stood four or four and a half feet from the ground, and that in turning the wagon the front wheels would pass under the bed. The seat was placed in the extreme front end of the bed, and was about two feet in width. The appellee, as he approached the crossing, and at the time he was injured, was standing against and immediately behind the seat in the front end of the wagon. The appellee testified that when he heard the whistle he stopped and listened, but, seeing nothing, and hearing nothing further, he went on toward the railroad crossing, his horses going in a slow walk, and when he was fifteen feet from the south rail, and at a point where he could have seen the train approaching for a distance of over 500 feet, and where he could easily have turned by reason of the level surface of the street and the peculiar construction of his wagon, he saw the train, which was then, according to the testimony of his own witnesses, midway between Clay street crossing and Washington avenue crossing, approaching from the east. Appellee saw that the train was close upon him; saw (to use his own language) the train coming very rapidly, and whipped up his horses in his attempt to beat the train over the crossing. This he failed to accomplish, and the rear

wheel of his wagon was struck by the train.   By the contact the appellee was thrown from his wagon, and in the fall had two ribs fractured on his right side, and was more or less bruised on his right side.   The evidence also shows that, if the appellee had looked toward the east as soon as he had passed the dwelling-house on the east side of Clay street, standing as he did in his wagon, he could have seen over the small outhouse, and could have noticed the approaching train, when he was, according to his own witnesses, twenty-seven feet, according to appellant, twenty-three feet, south of the track.   No witness testified that the whistle did not sound and that the bell was not ringing, although several testified that they did not hear either.   All the witnesses for the appellant that testified on the subject stated positively that the station whistle was sounded about a half or three-quarters of a mile east of town, and that a crossing signal of four blasts of the whistle was sounded shortly after the station signal, and before Clay street was reached; and also that the bell was ringing as the train approached and crossed the street.   Witnesses both on behalf of the appellee and the appellant, who were in the neighborhood of this crossing just before the accident, stated that their attention was attracted to the train before it reached the crossing, by the rumbling noise of its running. The appellee was familiar with the crossing and the times of the trains on this road.   This train, on the afternoon of the accident, was six or seven minutes late.   As soon as the engineer discovered the appellee, and that he was attempting to cross ahead of the engine, he applied the emergency brake, and did all in his power to stop his train, but no efforts he could make would avoid the accident. There was an ordinance in force in the city of Frankfort at the time of the accident limiting the speed of trains, within the corporate limits, to four miles an hour.   The train at the time of the accident was running faster than the speed allowed by the ordinance, varying, according to

the testimony, from ten to twenty-five miles per hour. There is nothing in the evidence to suggest that appellee's horses were not perfectly gentle, or that they were not manageable, and under his control. He made no attempt to stop them, or to turn them from the railroad, after seeing the approaching train, before urging them across the track. He testified that he did not hear the train before he saw it, and heard the whistle only when he reached the crossing of Washington avenue and Clay street, as above set out. The evidence does not show that he looked or listened for the train again, after hearing the whistle referred to, until he was within fifteen feet of the track.

In *Oleson* v. *Lake Shore, etc., R. Co.*, 143 Ind. 405, 32 L. R. A. 150, it was said on page 408: "It is thoroughly settled that if the facts are undisputed and only one inference can reasonably be drawn from them, the question whether there is or is not contributory negligence is one of law for the court. * * * It is settled law in this State that when a person crossing a railroad is injured by a collision with a train, the fault is *prima facie* his own, and he must affirmatively show that his fault or negligence did not contribute to the injury before he is entitled to recover. * * * The question of care at railway crossings as affecting the traveler is no longer, as a rule, a question for the jury. The *quantum* of care is exactly prescribed as a matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings and listen for approaching trains. In proportion as the danger increases must the vigilance of the person attempting to cross increase." So that appellee in the case at bar had the burden imposed upon him of showing freedom from contributory negligence, with the presumption of negligence against him. Conceding that appellant was negligent in running its train at a speed greater than the municipal ordinance allowed, that fact could be of no avail here.

It appears from the undisputed evidence that appellee

saw the coming train, and yet undertook to cross the track. The facts do not show that the situation in which he was placed required him to take the risk which resulted so unfortunately. His action, so far as the facts inform us, was voluntary. The conditions did not require him to go forward.

The case before us is not one in which appellee was thrown off his guard or induced to drive upon the track by some act of appellant. The only negligence shown by appellant was the violation of the city ordinance, but appellee saw the rapidly running train. There was nothing in its high rate of speed to create the impression that there was a less degree of danger than actually existed; nor did any act of appellant's servants invite him to assume an unnecessary risk. Neither does the evidence show sudden fright or confusion, which in some cases have been held to excuse imprudence.

*Korrady* v. *Lake Shore, etc., R. Co.*, 131 Ind. 261, was a case in which the appellant's decedent was killed in attempting to cross appellee's track before a moving train. Elliott, C. J., speaking for the court said: "As soon as Korrady crossed the side-track immediately south of the main track and before he attempted to cross the main track he looked to the west to see if any train was approaching. He saw the approaching train, and at that point there was nothing to obstruct his view. If he had stopped at a point five feet south of the south rail, he could have seen the approaching locomotive, and he did see it before attempting to cross. There was no sudden danger, nothing requiring him to go forward, but he might have remained in safety in the place where he saw the approaching engine. We think it clear that the intestate was guilty of contributory negligence. He was not only able to see the approaching locomotive, but he did see it, and, notwithstanding this, he undertook to cross the track. He made the attempt and incurred the hazard when there was no reason for doing so.

Lake Erie, etc., R. Co. *v.* Pence.

The authorities are decisively against the right of recovery by one who voluntarily attempts to cross a track in front of a moving train which he sees not far distant approaching the crossing. *Indiana, etc., R. Co.* v. *Hammock*, 113 Ind. 1; *Ohio, etc., R. Co.* v. *Hill*, 117 Ind. 56; *Ohio, etc., R. Co.* v. *Walker*, 113 Ind. 196; *Heaney* v. *Long Island R. Co.*, 112 N. Y. 122, 19 N. E. 422; *Pakalinsky* v. *New York, etc., R. Co.*, 82 N. Y. 424; *Railroad Co.* v. *Houston*, 95 U. S. 697, 702, 24 L. ed. 542; *Tully* v. *Fitchburg R. Co.*, 134 Mass. 499. \* \* \* Running a locomotive at a rate of speed forbidden by a municipal ordinance is ordinarily negligence on the part of the railroad company, but such negligence will not excuse a person who assumes the risk of crossing in front of a train he sees and knows is approaching the crossing." *Cincinnati, etc., R. Co.* v. *Howard*, 124 Ind. 280; *Aurelius* v. *Lake Erie, etc., R. Co.*, 19 Ind. App. 584; *Sutherland* v. *Cleveland, etc., R. Co.*, 148 Ind. 308.

We do not deem it necessary to determine whether, in making no other stop to look and listen than that at the crossing of Washington avenue and Clay street, in view of the obstructions upon a part of the route, and the noise of his moving wagon, which might have prevented, the former his seeing, the latter his hearing, the coming train, he exercised what the law defines as ordinary care under all the circumstances. Without the consideration of that question, the authorities cited are conclusive of the proposition that appellee, after seeing his danger, voluntarily assumed an unnecessary risk, and was, therefore, guilty of contributory negligence. It is not to the interest nor conducive to the security of travelers, either upon public highways or railroads, that the rule announced in *Korrady* v. *Lake Shore, etc., R. Co.*, *supra*, should, through sympathy for those unfortunate enough to suffer from its disregard, be relaxed. Questions presented by other alleged errors may not arise upon a second trial, and are therefore not considered.

Judgment reversed, with instruction to sustain appellant's motion for a new trial.