# INDIANAPOLIS STREET RAILWAY COMPANY ET AL. *v.* BOLIN.

[No. 5,371. Filed June 7, 1906. Rehearing denied October 5, 1906. Transfer denied December 11, 1906.]

1. APPEAL.—*Briefs.*—*Waiver.*—Alleged errors, not discussed on appeal, are waived. p. 173.

2. TRIAL.—*Interrogatories to Jury.*—*Purpose.*—The purpose of interrogatories to the jury is to ascertain by a limited number of concise, clear and not overlapping or confusing questions, the material facts shown by the evidence. p. 174.

3. NEGLIGENCE.—*Street Railroads.*—*Users of Other Vehicles.*—Street railroad companies, in the use of cars, and the users of other vehicles must use the streets at all times with a proper regard for the rights of one another. p. 175.

4. NEGLIGENCE.—*Street Railroads.*—*Travelers.*—A traveler in a buggy may, without contributory negligence, cross a street car track in front of a car thereon, where it reasonably appears that he may pass in safety if he and those in charge of the car act with reasonable care. p. 175.

5. TRIAL.—*General Verdict.*—*Answers.*—*Which Controls.*—The answers to the interrogatories to the jury control the general verdict only where there is an irreconcilable conflict between them under any supposable evidence admissible under the issues. p. 176.

6. STREET RAILROADS.—*"Dangerous Speed."*—*Question for Jury.* —Whether a street car is running at a dangerous rate of speed, as alleged in a complaint, is, under all of the circumstances, a question of fact for the jury. p. 177.

7. SAME.—*Reasonable Care.*—*Question for Jury.*—Whether a street railroad company exercised reasonable care under the circumstances is, ordinarily, a question of fact for the jury; and while the court may instruct as to the law of the case, it may not usurp the functions of the jury in deciding matters of fact. p. 177.

8. TRIAL. — *Verdict.* — *General.* — *Street Railroads.*—*Speed.*—A general verdict for plaintiff, in an action for personal injuries resulting from a collision between plaintiff's buggy and a street car alleged to have been run at a dangerous rate of speed, is a finding that such car was so run. p. 178.

9. NEGLIGENCE. — *Street Railroads.* — *Care.* — *Presumptions.*—A traveler on a city street has the right to assume that persons in charge of a street car will exercise ordinary care. p. 178.

10. STREET RAILROADS.—*Excessive Speed.*—*Notice to Travelers.*— *Burden of Proof.*—A street railroad company cannot escape liability caused by its excessive speed, unless it can show that the injured traveler had notice of such speed before he entered the place of peril. p. 178.

11. SAME. — *Speed.* — *Travelers.* — *Contributory Negligence.* — Where a traveler attempts to cross the track in front of a car believed by him to be running at an ordinary speed, but which was actually running at an excessive rate, he is not guilty of contributory negligence, if, at such ordinary rate, he could reasonably have crossed in safety. Comstock, P. J., and Wiley, J., dissenting. p. 178.

12. SAME.—*Excessive Speed.*—*Contributory Negligence.*—To establish contributory negligence in a traveler injured by defendant street railroad company's running its car at an excessive speed, the company must show that he had knowledge of

Indianapolis St. R. Co. *v.* Bolin—39 Ind. App. 169.

such speed and that by the use of ordinary care he could have avoided the injury. p. 179.

13. STREET RAILROADS.—*Traveler Crossing Tracks of.—Contributory Negligence.*—The mere fact that a traveler can see an approaching car on a street railroad track, does not of itself establish his contributory negligence in attempting to cross. Comstock, P. J., and Wiley, J., dissenting. p. .179.

14. TRIAL.—*Interrogatories to Jury.—Street Railroads.—Excessive Speed.—Contributory Negligence.*—Answers to the interrogatories to the jury, in an action for personal injuries, showing that defendant ran its car, which caused plaintiff's injuries, at a dangerous speed, that plaintiff acted as an ordinarily prudent man, and which answers failed to show that plaintiff knew or had reason to know of such excessive speed when he attempted to cross in front of the car which struck him, are not irreconcilable with a verdict for plaintiff. Comstock, P. J., and Wiley, J., dissenting. p. 179.

15. SAME.—*Verdict.—General.—Effect.*—A general verdict for plaintiff is a finding that the allegations of the paragraphs of his complaint are true. p. 179.

16. SAME.—*Interrogatories to Jury.—Street Railroads.—Care.*— Answers to interrogatories to the jury showing that the servants in charge of the street car causing plaintiff's injuries did nothing to check the car or to avoid the collision, where they could have done so, support a general verdict for plaintiff, where there was no finding that they did not know of the plaintiff's peril, the inference under the circumstances being that they knew thereof, or should have known. p. 180.

17. SAME. — *Verdict. — Answers.—Presumptions.*—Presumptions are ineffective where the facts themselves are expressly found. p. 180.

18. STREET RAILROADS.—*Streets.—Right to Use.*—Travelers have a legal right to use all portions of a street in which are street car tracks, but they must use reasonable care not to obstruct the passage of street cars over such tracks. p. 180.

19. TRIAL.—*Street Railroads.—Negligence.—Evidence.*—Evidence showing that plaintiff attempted to cross a street car track in front of an approaching car; that such car, unknown to plaintiff, was running at a dangerous rate of speed; that the employes in charge thereof did nothing to check the car or to avoid injury; that plaintiff when he saw a collision was imminent, tried to avoid same, but failed; that plaintiff from the first was in plain view of the motorman, supports a verdict for plaintiff. Comstock, P. J., and Wiley, J., dissenting. p. 181.

20.   NEGLIGENCE.—*Last Clear Chance.*—The doctrine of "last clear chance" is strongly supported by a wise public policy.   p. 182.

21.   COURTS.—*Enforcement of Rights.—Personal Security.—Property Rights.*—Laws are enacted and enforced primarily for the security of life and limb, and secondarily, for the protection of property rights.   p. 182.

22.   NEGLIGENCE.—*Last Clear Chance.*—Defendant is liable for negligently inflicted injuries, where the plaintiff was also guilty of negligence, if by the use of ordinary care defendant could have avoided such injuries after becoming aware of plaintiff's situation.   p. 183.

23.   SAME.—*Last Clear Chance.*—Where the employes in charge of a street car ran such car at a dangerous rate of speed, and a traveler undertook to cross the track in front, supposing the car was running at an ordinary speed, the company is liable for injuries inflicted by the failure of such employes to stop such car and thus avoid injury, such traveler being at all times in a place where, by the exercise of ordinary care, he could have been seen by such servants.   Comstock, P. J., and Wiley, J., dissenting.   p. 183.

24.   SAME.—*Street Railroads.—Travelers.—Question for Jury.*—Whether a street railroad company used ordinary care in failing to stop its car, which was being run at a dangerous speed, in time to avoid a collision with a traveler crossing its track in front, is a question for the jury.   Comstock, P. J., and Wiley, J., dissenting.   p. 183.

From Superior Court of Marion County (64,912); *Vinson Carter,* Judge.

Action by Lewis Bolin against the Indianapolis Street Railway Company and another.   From a judgment for plaintiff, defendants appeal.   *Affirmed.*

*F. Winter* and *W. H. Latta,* for appellants.

*Elmer E. Stevenson* and *Edward H. Knight,* for appellee.

ROBY, J.—Action by appellee.   Verdict and judgment against appellants for $6,000.   Their motion for judgment on interrogatories returned by the jury was overruled, as was also their motion for a new trial, and said rulings are assigned as error.

An additional assignment challenges the sufficiency of the complaint for the first time, but is not supported by any argument, and is therefore waived.

The complaint was in four paragraphs. The jury were instructed to . find for the defendant Indianapolis Street Railway Company upon the fourth paragraph. The issue upon the remaining ones was formed by a general denial. It is alleged in the first paragraph that the Indianapolis Street Railway Company negligently ran one of its cars along Illinois street, in the city of Indianapolis, at a dangerous and reckless rate of speed, to wit, twenty miles an hour, and while so running at said high and dangerous rate of speed negligently ran its car into and against a horse and buggy driven by appellee, thereby inflicting injuries upon appellee. The second paragraph alleges that said company negligently ran one of its cars along said street at a dangerous, unusual, and reckless rate of speed, and, while so running, carelessly and negligently ran said car against the horse which appellee was driving, and the buggy in which he was riding, injuring, etc.; that appellee was traveling on the east side of Illinois street, and when said car was distant several-hundred feet from him, and when it was to him, and would have been to any ordinary person, under similar circumstances, in the exercise of ordinary and reasonable care, apparently safe to cross the tracks of said company, he started across the tracks of said company, crossing from the east to the west side of said Illinois street; that after plaintiff had gotten across the east track of said defendant company, and had started across the west track, he saw that said car was coming at an unusual, excessive and reckless speed, and that the motorman in charge thereof was not slackening the speed of the car, and at said time realizing that he could not safely get across the west track of said defendant company—said car being

about one hundred feet distant from him—he turned his horse as quickly as he could, to get back into a position of safety; that the plaintiff immediately and continuously used his best efforts to get into a position of safety, but, notwithstanding said effort on his part, the servants of said defendant, in charge and control of said car, who saw, or by the exercise of reasonable care could have seen, plaintiff's danger and his efforts to get into a position of safety, made no effort to stop said car, nor slacken its speed, nor to prevent a collision with plaintiff's horse and buggy; that the servants of said defendant, in charge of said car, while in the line of their duty, in the exercise of proper and reasonable care, after they saw, or could by ordinary care have seen, that the plaintiff was in a place of danger from which he was trying to escape, could have stopped said car or slackened the speed thereof so as to avoid the collision. And the plaintiff avers that at said time he could have crossed said track in safety had not said defendant ran its said car at such a dangerous, unusual, excessive and reckless rate of speed, which manner of operating said car was not known, and could not have been known, by plaintiff until he got into a place of danger on said tracks, as aforesaid; that at the instant of collision he was using every effort in his power to escape from a situation suddenly rendered perilous by said negligent acts of said defendant. The third paragraph is substantially the same as the second one, except for an additional averment that the motorman had negligently ran the car at such speed as to lose control thereof, whereby he was unable to prevent plaintiff's injury after the danger became apparent to him.

There were 108 interrogatories submitted to, and answered by, the jury. The length and multiplicity of said interrogatories not only render it impracticable to

2.  set them out in this opinion, but the necessary overlapping of questions, in order to make so many, and

the resulting conflict in answers defeat the legitimate and statutory end which interrogatories to the jury are designed to subserve.

Both street car companies and those traveling on city streets in other vehicles must use the streets at all times with a just regard to the rights of the other. *Indianapolis St. R. Co.* v. *O'Donnell* (1905), 35 Ind. App. 312; *Howard* v. *Indianapolis St. R. Co.* (1902), 29 Ind. App. 515; *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490; *Cincinnati St. R. Co.* v. *Snell* (1896), 54 Ohio St. 197, 43 N. E. 207, 32 L. R. A. 276; *Newark, etc., R. Co.* v. *Block* (1893), 55 N. J. L. 605, 27 Atl. 1067, 22 L. R. A. 374; *Thompson* v. *Salt Lake, etc., Transit Co.* (1898), 16 Utah 281, 52 Pac. 92, 67 Am. St. 621, 40 L. R. A. 172; *Cogswell* v. *West St., etc., R. Co.* (1892), 5 Wash. 46, 31 Pac. 411; *Tacoma R., etc., Co.* v. *Hays* (1901), 110 Fed. 496, 49 C. C. A. 115; *Cincinnati St. R. Co.* v. *Whitcomb* (1895), 66 Fed. 915, 14 C. C. A. 183; *Schilling* v. *Metropolitan St. R. Co.* (1900), 62 N. Y. Supp. 403.

The driver of an ordinary vehicle can proceed over a street railway in the face of an approaching car, when, and only when, he has reasonable ground for believing that he can pass in safety if both he and those in charge of the car act with reasonable regard to the rights of others. The duty to slow up or stop, if necessary to prevent a collision, rests equally on each party. Under ordinary circumstances, the first to reach the crossing, if each has been moving at a reasonable rate of speed, has the right to proceed over it before the other, but if it be apparent to the traveler that the motorman does not respect this right, he must stop and give way, if a collision can thus be avoided. Baldwin, American Railroad Law, 418.

"We need scarcely say that to justify the sustaining of such a motion [for judgment on the answers to interroga-

tories] the answers must make out a case of such antagonism between them and the general finding on some vital point as not to be capable of being removed by any evidence which would have been admissible under the issues." *Indianapolis St. R. Co.* v. *Marschke, supra.*

The answers to interrogatories show that there were two car tracks in Illinois street, four feet, eight and one-half inches apart, the rails of which were laid even with the pavement, and that the roadway on each side of said tracks was fourteen feet wide. Cars going south used the west track, and those going north, the east track. Plaintiff was driving a horse and buggy north along the east side of the street, and the car with which he subsequently came in collision was coming from the north. He turned to go across the track, intending to go south on the west side of the street, to a residence at which he wished to stop. There was nothing to prevent his seeing the car, and nothing to prevent the motorman's seeing him. From the time he turned in the direction of the track, until he was struck, he moved about fifteen feet, at the rate of about four miles an hour. The car, when he first began to turn, was about two hundred and twenty-five feet north of him. Illinois street was intersected by Twenty-ninth street at a point about one hundred and sixty feet north of him. The car was running at the rate of twenty miles an hour. When the car was about sixty feet distant he first discovered the rate of speed at which it was going, and acted quickly in attempting to avoid a collision. The answers do not say in what such action consisted. Its particulars are involved in the motion for a new trial, and are shown by the evidence. It is further stated by the answers that when he first saw the car he paid attention to its speed, which he underestimated because of the distance intervening. He did not know it was dangerous to try to cross the track, and was prevented from knowing it because of the distance

of the car from him, his position in front of the car, and by misjudging its speed. He could not have known, in time to avoid the accident, that it would be dangerous to try to cross, and that a reasonably prudent man, under the circumstances, could not have avoided the accident.

The charge in the complaint is that the car was run at a high and dangerous rate of speed. The issue thus tendered was an issue for the jury, to be determined
6.  by it with reference to existing conditions and circumstances. *Citizens St. R. Co.* v. *Hamer* (1902), 29 Ind. App. 426; *Chicago City R. Co.* v. *Robinson* (1888), 127 Ill. 9, 18 N. E. 772, 4 L. R. A. 126, 11 Am. St. 87; *Thompson* v. *Salt Lake, etc., Transit Co., supra; Cincinnati St. R. Co.* v. *Snell, supra; Roberts* v. *Spokane St. R. Co.* (1900), 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184; *Robbins* v. *Springfield St. R. Co.* (1895), 165 Mass. 30, 42 N. E. 334; *Lawler* v. *Hartford St. R. Co.* (1899), 72 Conn. 74, 82, 43 Atl. 545; *Woodland* v. *North Jersey St. R. Co.* (1901), 66 N. J. L. 455, 49 Atl. 479; *Indianapolis St. R. Co.* v. *Darnell* (1904), 32 Ind. App. 687.

"While it is the province or right of the trial court to instruct a jury fully, freely and pointedly on all matters of law applicable to the case, still the court in doing
7.  so is not authorized to usurp or entrench upon the functions of the jury in the determination of matters of fact. * * * Whether appellant, at the time of the accident had exercised the care which the law exacted in the operation of its car was a question of fact to be determined by the jury under all the circumstances and evidence in the case applicable to that point." *Indianapolis St. R. Co.* v. *Taylor* (1905), 164 Ind. 155, 160.

The language above quoted, which so well expresses the primacy of the jury with regard to facts in issue, was directed to the action of a trial judge in instructing a jury that greater care in running a car is required in populous cities and crowded streets than in sparsely settled districts

upon which there are few travelers, and is applicable to questions of negligence by a defendant exactly as it is to questions of negligence by a plaintiff; difference in parties making no difference in principle. *Indianapolis St. R. Co.* v. *Schmidt* (1905), 35 Ind. App. 202; *Indianapolis St. R. Co.* v. *Marschke, supra.*

The general verdict carries with it a finding that the car in question was negligently run at a high and dangerous rate of speed, and this fact must be considered, together with all other relevant facts upon the question of contributory negligence, by the plaintiff.

The traveler has the right to assume that the car company will exercise ordinary care and diligence to prevent accidents of this character. *Indianapolis St. R. Co.* v. *Marschke, supra; Indianapolis St. R. Co.* v. *Schmidt, supra; Scofield* v. *Myers* (1901), 27 Ind. App. 375; *Mapes* v. *Union R. Co.* (1900), 67 N. Y. Supp. 358, 361; *Rooks* v. *Hauston, etc., R. Co.* (1896), 41 N. Y. Supp. 824; *Tunison* v. *Weadock* (1902), 130 Mich. 141, 89 N. W. 703; *Montgomery* v. *Lansing City Electric R. Co.* (1894), 103 Mich. 46, 61 N. W. 543, 29 L. R. A. 287; *Rouse* v. *Detroit Electric Railway* (1901), 128 Mich. 149, 87 N. W. 68.

Had the car in question been thus run, a traveler driving upon the track in front of it, and in such proximity as necessarily to result in his injury, could have small excuse. Having added to the conditions which ordinarily exist the element of its own negligence, the car company, before it can be exonerated from liability arising from an injury thus caused, must bring to the plaintiff the knowledge, either actual or implied, of excessive speed and resulting danger.

It was said by this court, in a similar case: "When appellee turned to go upon the crossing, the car was more than one hundred and sixty feet away. He did not know a car was approaching at the rate of forty miles per hour. Had he seen the car when that

distance away, and there was nothing to lead him to believe that it was running any faster than the ordinary rate of speed, his attempt to cross the track in front of the car would not have been, as a matter of law, negligence." *Union Traction Co.* v. *Vandercook* (1904), 32 Ind. App. 621. And see *Indianapolis St. R. Co.* v. *O'Donnell, supra.*

The defendant, seeking to establish contributory negligence, ought in fairness to eliminate his own negligence as a factor, by showing that the traveler, in attempting to cross, acted, or was bound to act, not with reference to a usual and safe rate of speed, but with reference to the high and dangerous rate at which the car was being negligently run. This can ordinarily be done by showing that the actual rate was known to the traveler, or should, under the circumstances, have been known to him in the exercise of ordinary and reasonable care. It necessarily follows that the mere fact that a traveler can see an approaching car by which he is afterward struck does not in itself establish his contributory negligence. The answers to interrogatories, instead of tending to show knowledge by appellee of this important factor in the situation, conform to the general verdict. Neither does it appear from the answers to the interrogatories that appellee had reason to apprehend that the motorman would run the car at a negligent rate of speed, or that he would fail to stop or check it at the intersecting crossing or thereafter, before the collision.

The general verdict also carries with it a finding that the averments of the second and third paragraphs of the complaint were proved. These paragraphs proceeded upon a theory which is "a phase of the rights and obligations of the parties which arises upon the proofs rather than by pleading," and which is therefore necessarily included in the first paragraph of complaint (*Indianapolis St. R. Co.* v. *Marschke, supra*), but was, in

the case at bar, specifically made by the complaint, and the answers to the interrogatories are not in irreconcilable conflict with the verdict, as it has relation to this branch of the case, but they also accord therewith.

It is stated that the motorman did not do everything he could to stop the car and avoid the injury, after appellee turned to cross the track. It is found that the car could have been stopped within sixty feet. There was no showing that the motorman exercised any care, or attempted in any way to control the speed, or stop the car, or avoid the collision. It is not stated that he had the car under control when he reached the street crossing, one hundred and sixty feet distant, or at any other time. It is not shown that he did not know of appellee's peril and the facts stated require an inference that he either did know or ought to have known it. *Indianapolis St. R. Co.* v. *Seerley* (1905), 35 Ind. App. 467.

As against this finding of facts presumptions are ineffective. The facts here involved are much stronger than those which were considered by this court in the case last cited, which is conclusive upon the proposition that there was no error in overruling appellant Indianapolis Street Railway Company's motion for judgment upon the answers to interrogatories, notwithstanding the general verdict. The assignment that the court erred in overruling said appellant's motion for a new trial presents the question as to whether the evidence sustains the verdict, and the action of the court in giving and refusing to give certain specified instructions.

Appellee traveled upon the east side of the street until he was opposite a house where he desired to go, and for that purpose turned to drive across the street. The house was midway in the block, and he or any other person desiring to go there had a perfect right to cross the street in front of it. The street car company did

not have an exclusive right to any part of the highway, and while, because of the character of the vehicle used by it and the manner of such use, it does have a preferential right to the portion occupied by its tracks, other persons using the street are not excluded from using that portion thereof on which the track is laid. · *Citizens St. R. Co.* v. *Hamer* (1902), 29 Ind. App. 426; *DeLon* v. *Kokomo City St. R. Co.* (1899), 22 Ind. App. 377; *Indianapolis St. R. Co.* v. *Slifer* (1905), 35 Ind. App. 700; *Hennessey* v. *Taylor* (1905), 189 Mass. 583, 76 N. E. 224; *Bedell* v. *Detroit, etc., Railway* (1902), 131 Mich. 668, 92 N. W. 349; *Robards* v. *Indianapolis St. R. Co.* (1904), 32 Ind. App. 297.

Appellee testified as follows: "I started to go across, and as I went I kind of angled across to get around in front of Baker's house. I was above the house a little, and I wanted to get across." The car was at that time two hundred and twenty-five feet distant. He further testified that he looked north when he started to drive across, and saw the car, which he subsequently ascertained to be the distance away above stated. He did not see how fast it was coming until it was two or three cars' lengths away, at which time it was coming "awful fast." He said: "It was kind of rocking and puffing like a threshing-machine. I saw I could not cross, and I pulled the horse around to my left. I was trying to get off the track. I did not try to go across the track, because the car would have hit the buggy in the center. I pulled the horse around as short as I could. I did not get the buggy cramped. I was going angling southwest. The front buggy wheel was toward the track and the car struck it."

The car was run at a high speed—twenty miles an hour —up to the very time of the collision, as found by the jury in answer to interrogatories, although there was evidence that it was running at a still higher rate. The evidence of

a civil engineer, who was near, was that it ran one hundred forty feet or more after the collision before it was stopped. The jury in answer to interrogatories, as heretofore stated, fixed such distance at sixty feet. The undisputed evidence is that a car running at twenty miles an hour could be stopped in sixty feet. It does not appear that the motorman exercised or attempted to exercise the slightest control over the car prior to the accident. His opportunity to observe the buggy driving toward and across the track was not limited. He knew the rate of speed at which he was running, and his ability or inability to control the car, and thus advised, his failure to check or attempt to check speed, after he saw appellee driving toward and upon the track, affords support to the verdict. It is noticeable that the motorman was not a witness. *Indianapolis St. R. Co.* v. *Darnell* (1904), 32 Ind. App. 687.

The eighth instruction given by the court is substantially the same as the seventh instruction given in *Indianapolis St. R. Co.* v. *Seerley, supra,* and approved by this court. It, in connection with the other instructions given, states the doctrine known as that of "the last clear chance"—a doctrine firmly established on both principle and authority. Except for it, the greater the original negligence of a defendant, and the more gross its delinquency, the less likelihood of a recovery against it on account of injury caused thereby. It serves the broadest principles of public policy. The State is interested not alone that justice be done in a given instance, but that the law be so declared as that it will tend to the security of life and limb. The government is dependent upon its citizenship, not only politically, but economically, and high as is the duty which devolves upon the courts of protecting acquired rights of property, it is subordinate to the one which has as its object the uninterrupted enjoyment of that personal security which

is incident to human existence, and in which every individual is entitled to the fullest protection which society can give. Therefore the language of 1 Shearman & Redfield, Negligence (5th ed.), §99, as adopted by the Supreme Court of Indiana, which follows:

"It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort in which this rule is longer disputed." *Southern Ind. R. Co.* v. *Fine* (1904), 163 Ind. 617, and authorities cited on page 626.

The doctrine has been many times stated and applied to facts similar to those under consideration, as shown by the following cases, and authorities therein cited: *Citizens St. R. Co.* v. *Hamer, supra; Indianapolis St. R. Co.* v. *Schmidt, supra; Indianapolis St. R. Co.* v. *Marschke, supra; Indianapolis, etc., Terminal Co.* v. *Smith* (1906), 38 Ind. App. 160; *Indianapolis St. R. Co.* v. *Seerley, supra; Cleveland, etc., R. Co.* v. *Klee* (1900), 154 Ind. 430.

The instructions given by the court fully cover the case and fairly submit the issues of fact. The questions upon which the application of the foregoing rule was dependent were properly left to the jury. There was therefore no error either in the instructions given according with the propositions above stated, or in refusing those antagonistic thereto.

Judgment affirmed.

Robinson, C. J., and Myers, J., concur. Black, J., concurs in result. Comstock, P. J., and Wiley, J., dissent.

## DISSENTING OPINION.

COMSTOCK, P. J.—The facts specially found disclose that, at the time of the accident appellee was forty years old, in the full possession of his physical and mental faculties. He was driving a gentle horse, under complete control, which he might have stopped at any time or place. When his horse was on the east track nothing prevented appellee's knowing the close proximity of the car. All his acts in attempting to cross the tracks were voluntary. There was no necessity or emergency controlling his movements. Nothing was done by appellant to mislead or deceive him, or throw him off his guard. The car was coming toward him, and he could have observed its movements at all times when it was within five hundred feet. When the horse began to turn toward the tracks, the car was about two hundred and twenty-five feet away; and when it was on the east track, one hundred and twenty-five feet away; and when on the space between the two tracks, sixty feet away. He made a miscalculation of the time he would have to cross in front of the car, and concluded that he would have time to cross the track. When he was ten feet from the place of the accident he was traveling about three miles, and the car about twenty miles, an hour and one hundred twenty-five feet away. When he was twenty feet from the place of the accident he was traveling about five miles, and the car about twenty miles, an hour and two hundred twenty-five feet away. When he was thirty feet from the place of the accident he was traveling five or six miles, and the car twenty miles, an hour. He first came into danger when he was about ten feet from the place of the accident, which distance he traveled until he was struck. He did not think to observe the car while he was driving over the east track and the space between the tracks. Plaintiff was familiar with the location and all its conditions. The accident happened in a sparsely settled part of the city, one hundred sixty feet from the nearest

intersecting street.   Facts are found from which it may be inferred that the car might have been stopped within sixty feet.   It is manifest that had he observed the car while on the east track or on the space between the tracks he could have avoided the injury.   These findings conclusively show that appellee voluntarily and needlessly encountered danger apparent to casual observation, under circumstances free from confusion and inconsistent with ordinary prudence. He simply miscalculated the time it would take him to cross and get out of the way.   Many cases can be cited holding injured parties to be guilty of contributory negligence on facts not more clearly indicating rashness than in the case at bar.  *DeLon* v. *Kokomo City St. R. Co.* (1899), 22 Ind. App. 377, is a decision of the question of appellee's negligence.  *Young* v. *Citizens St. R. Co.* (1897), 148 Ind. 54; *Citizens St. R. Co.* v. *Helvie* (1899), 22 Ind. App. 515; *Indianapolis St. R. Co.* v. *Tenner* (1904), 32 Ind. App. 311; *Indianapolis St. R. Co.* v. *Marschke* (1906), 166 Ind. 490; *Robards* v. *Indianapolis St. R. Co.* (1904), 32 Ind. App. 297; *Indianapolis St. R. Co.* v. *Zaring* (1904), 33 Ind. App. 297; *Marchal* v. *Indianapolis St. R. Co.* (1901), 28 Ind. App. 133; *Kessler* v. *Citizens St. R. Co.* (1898), 20 Ind. App. 427; *Moran* v. *Leslie* (1904), 33 Ind. App. 80; *Korrady* v. *Lake Shore, etc., R. Co.* (1892), 131 Ind. 261; *Lake Erie, etc., R. Co.* v. *Pence* (1900), 24 Ind. App. 12.

While all reasonable presumptions are indulged in favor of general verdicts, yet if the answers returned by the jury are irreconcilably in conflict therewith, they will overthrow the general verdict.   While the general verdict finds that the plaintiff was free from contributory negligence, the facts specially found show plaintiff to have been guilty of contributory negligence, and are irreconcilably in conflict with that verdict.  *Cleveland, etc., R. Co.* v. *Heine* (1902), 28 Ind. App. 163; *Bedford Quarries Co.* v. *Thomas* (1902), 29 Ind. App. 85.

It is contended, however, that appellee's conduct is not contributory negligence, because appellant could have avoided the injury by the use of ordinary care, after discovering the exposed situation of appellee. This claim is based upon the doctrine of last clear chance. Knowingly to inflict injury, when such injury can be avoided by the use of ordinary care, amounts to wilfulness. The motorman is not required to assume that an adult, in the full possession of his faculties, will needlessly expose himself to danger. The motorman was not bound to anticipate that appellee would turn upon the track. When the appellee turned the danger became imminent, upon the hypothesis that he would continue across the track. The car was then sixty feet away. It required this distance to stop the car. This gave the motorman no time to apprehend the dangerous situation in which the appellee had placed himself. Up to the time of plaintiff's entering upon the track, no danger was to be apprehended from the speed of the car, for the accident occurred between crossings. The motorman had as much reason to anticipate that appellee was in time to cross the track in front of the moving car as had the appellee to believe that he could do so. If two parties are contemporaneously in fault, and by their mutual negligence an injury ensues to one, the doctrine of last clear chance does not apply. *Robards* v. *Indianapolis St. R. Co., supra; Everett* v. *Los Angeles, etc., R. Co.* (1896), 115 Cal. 105, 43 Pac. 207, 46 Pac. 889, 34 L. R. A. 350. If it had been apparent to the motorman that the horse was frightened or that appellee for any reason had lost control of the horse and was in danger, then it would have been the duty of the motorman to stop the car if possible. *Citizens St. R. Co.* v. *Lowe* (1895), 12 Ind. App. 47, 54, and cases cited. The doctrine under consideration applies when it is apparent that the party is in a position of danger from which he cannot extricate himself. *Cleveland, etc., R. Co.* v. *Klee* (1900), 154 Ind. 430; *Krenzer* v. *Pittsburgh, etc.,*

R. Co. (1898), 151 Ind. 587, 68 Am. St. 252; Dull v. Cleveland, etc., R. Co. (1899), 21 Ind. App. 571. To justify the application of the doctrine in this case, the motorman must have had the last clear chance; that is, evident and last to avoid the danger after he had learned of it and knew that the safety of appellee depended solely upon him. Daily observation of human conduct does not lead to the conclusion that sane adults will place themselves in positions of open danger. The motorman was not required to assume that the appellee would court danger or disregard all prudence, and when appellee's danger became apparent there was not time and space to stop the car. It is insisted, in this case, by the appellee that even if he was negligent in going upon the track, when struck by the car his negligence had ceased, because he was attempting to get out of the way of the approaching car; that after his negligence there was a change in the situation, and a new act of negligence was imputable to appellant, which became the proximate cause of the injury. If appellee was guilty of negligence in going upon the track, whether, in the instant of his injury, he was attempting to go backward or forward to get out of the way of the car, could make no difference. The rule of the last clear chance does not apply where the act of the injured party and the defendant are substantially concurrent. The conduct of the defendant in driving upon the track cannot be separated from the injury. No court will hold that a railroad company may run down a party though he is negligently on its track, when by the exercise of ordinary care it can be avoided. No more can the driver of a private vehicle commit a like brutality. Defendants have been held liable when such acts have occurred, either because they showed wilfulness or a want of due care.

The majority opinion overthrows a doctrine, well recognized, that one cannot hold another responsible for errors of his own judgment. In effect it says, that to be excused

from the results of one's negligence, it is but necessary for the injured party to show that he erred in his judgment. Negligence should not be encouraged, neither upon the part of common carriers or travelers. The prevailing opinion holds out to one willing to risk his life or limb in an unnecessary danger to cross a railway in full view and in front of an approaching car the assurance that, if he is unfortunate enough to receive injury, he shall be compensated therefor, notwithstanding the rashness of his own unnecessary act. All decisions up to this time hold that the duties and rights of the traveler and the common carrier are reciprocal. Such decisions are held for naught in the prevailing opinion. Being of the opinion that contributory negligence is still a defense in actions of this character, and that such defense is clearly established by the special finding of facts and the appellee's own testimony, I am unable to agree in the opinion affirming the judgment.

Wiley, J.—From the facts specially found I am clearly of the opinion that appellee was shown to be guilty of contributory negligence which would preclude his recovery. If the doctrine declared in the prevailing opinion is to obtain, it seems to me that the rule of contributory negligence is taken out of cases of this character.