Beck *v.* INDIANAPOLIS TRACTION AND TERMINAL COMPANY.

[No. 9,552.   Filed May 17, 1918.]

1.   STREET RAILROADS.—*Collisions.—Instructions.—Province of Jury.*
—Where the driver of a hearse attempted to drive diagonally across street car tracks and was struck by a street car, in an action for the damages occasioned thereby, an instruction that, if the driver of the hearse drove on the tracks when he might have

stopped after observing that the motorman was not looking, there could be no recovery, was improper as an invasion of the province of the jury, since the jury had the right to determine whether the driver acted as a reasonably prudent person would have acted under the same circumstances.   p. 643.

2.   STREET RAILROADS.—*Operation.—Ordinary Care.*—Ordinary care required the motorman of a street car to keep a lookout ahead. p. 645.

3.   STREET RAILROADS. — *Collisions. — Contributory Negligence.* — Where the driver of a hearse started to drive diagonally across street car tracks, when a car 150 feet away was approaching at the rate of six to ten miles an hour, the mere fact that he saw the motorman looking in an opposite direction would not be sufficient to charge him with contributory negligence as a matter of law. p. 645.

4.   STREET RAILROADS.—*Collisions.—Contributory Negligence.—Custom.*—In an action for damages sustained by the plaintiff in a collision between a hearse and a street car, where the defendant admitted a custom to give funeral processions the right of way, an instruction that, though the plaintiff, the driver of the hearse, had an equal right with the defendant to drive on that part of the street occupied by the tracks, it was his duty on seeing the car to drive off the tracks, was improper as ignoring the admitted custom.   pp. 645, 646.

From Marion Superior Court (99,404); *W. W. Thornton,* Judge.

Action by Frank A. Beck against the Indianapolis Traction and Terminal Company. From a judgment for the defendant, the plaintiff appeals. *Reversed.*

*Joseph Collier,* for appellant.

*Ralph K. Kane, F. Winter* and *W. H. Latta,* for appellee.

HOTTEL, J.—This is an appeal from a judgment in appellee's favor in an action brought by appellant for damages alleged to have resulted from a collision of appellee's car with appellant's hearse.

The issues of fact were tendered by a complaint in one paragraph and a general denial thereto.   A trial

by jury resulted in a verdict for appellee. A motion for new trial, filed by appellant, was overruled. This ruling is assigned as error. The grounds of said motion relied on as presenting reversible error challenge the applicability and correctness of certain instructions given by the court.

It is necessary to a proper understanding of our discussion of said instructions, and our disposition of the questions presented by the alleged errors, predicated on the giving of them, that we indicate the issues and evidence to which they were addressed.

The averments of the complaint pertinent to said questions are in substance as follows: Appellee is a corporation and, as such, on June 10, 1913, operated street cars over surface tracks located on Washington street, in the city of Indianapolis. On said day appellant's funeral car, while leading a funeral procession, drove onto and attempted to cross over appellee's car tracks near the intersection of said street with California street in said city. When a funeral car approaches and attempts to move across the track of appellee in said city, there is a custom observed by appellee under which its cars come to a full stop and give the funeral procession the right of way. Appellant's servant in charge of said funeral car had notice of and relied on said custom. The street car which collided with the funeral car was 150 feet from the funeral car as the latter moved onto appellee's track, and there was nothing to obstruct the view of those in charge of the street car, and, had they looked ahead, they could have seen the funeral car continuously from the time it was 150 feet or more away until it reached the point of collision. "Appellee disregarded said custom and negligently failed to

observe said funeral car and to stop said street car, or negligently failed and omitted to exercise reasonable care to stop said street car, or negligently failed and omitted to have the street car properly equipped with braking devices.'' As a proximate result of said acts of negligence, said street car collided with said funeral car without any negligence of appellant or his servant in charge of the funeral car contributing thereto.

There was evidence offered by appellant showing, or tending to show, the following facts: At the time of the collision, appellee, by its servants, was operating one of its cars west over its north track on Washington street, and appellant, by its servants, was driving its hearse at the head of a funeral procession moving east on said street. A custom was testified to under which appellee's agents and servants in charge of its street cars had been in the habit of stopping and holding its cars when a funeral procession approached and moved across its tracks, and it was admitted by appellee that there was a custom observed by it which gave the right of way to funerals. A Mr. Finn testified in substance that on the occasion in question he was on the hearse, in charge of the funeral; that the hearse led the procession and prior to the collision was moving east on the north side of Washington street; that the south side of Washington street east of California was blocked; that at this crossing, about where the traffic crossed, the hearse moved southeast from the north to the south side of the street; that, when the hearse started across appellee's north track, appellant's car, approaching over said track from the east, was about 150 feet east of the hearse, at which time the motor-

man was looking to the north; that, as they started to cross the track, he (the witness) signaled the motorman to stop the car; that from this position the hearse moved southeast, the car moving at slow speed toward it; that when within about twenty-five or thirty feet of the car he saw that the motorman was still looking toward the north and did not see them; that he then hallooed and threw up his hands to attract his attention; that the car struck the rear left wheel of the hearse; that when they drove onto said track he knew of said custom and believed the motorman would see them and stop the car. Other witnesses offered by appellant testified to seeing the collision and to seeing the motorman looking toward the north while the hearse was moving southeast over the north track. One of these witnesses testified that, when the car was fifty feet from the hearse, the man on the hearse threw up his hands, but that the motorman was not looking and the car hit the rear left wheel of the hearse. Another witness testified that he saw the man on the hearse throw up his hands when the car was about 100 feet away; that the motorman was not then looking toward the hearse, but was looking toward the north. Another witness testified that he was driving the carriage behind the hearse; that at the time the horses drawing the hearse started across the north track the car was 150 feet east, and the motorman was then looking toward the north; that the hearse moved southeast and when within twenty-five or thirty feet of the car Finn threw up his hands and hallooed, at which time the motorman saw them and attempted to stop his car, but failed, and the car hit the rear left wheel of the hearse when it was on or near the south rail of the north track. The

driver of the hearse testified to the following effect: The south side of Washington street east of California was obstructed so that I could not drive on that side of the street. When the hearse was two or three feet from the north track and the street car about 150 feet east of us, I turned the horses on the north track and turned around to watch from the northwest to see that a car did not come from that direction before I went on the south track, and while doing so, Finn said, "He does not see us." I turned my head to look and the street car struck the rear wheel of hearse and upset us. The defendant stops the cars for a funeral procession and I knew of this custom and believed it would observe it when I drove on the track, and the first I knew it would not do so was when Finn made the statement, and it was then too late for us to escape.

Witnesses offered by appellee testified in substance as follows: A Mr. Rogers testified that he was a passenger on the car and saw the hearse when 200 feet away up close to the north curb. The hearse moved east and the car west until the hearse was about twenty-five feet from the car, when it turned suddenly southeast and went on the track and the car struck the left rear wheel. Another witness on the car testified to seeing the hearse when twenty-five feet away; that at this time the motorman was looking ahead and his car was moving eight or ten miles an hour, and stopped about three feet after the collision. The conductor on the car testified that he was looking ahead and saw the hearse moving straight ahead about eight feet north of the north rail, until it was within twenty-five or thirty feet of the car, when it was turned south and driven upon the track

in front of the car and hit. The motorman was looking ahead, and, when the hearse turned to go on the track, he attempted to stop the car and ran five or six feet after the collision.

The motorman testified that he did not look to the north; that he saw the hearse moving east about two miles an hour, four to six feet north of the north track; that the car was moving six to eight miles an hour; that, when the hearse reached the alley and was about twenty or twenty-five feet from the car, it turned south and went diagonally across the track; that, when he noticed the horses make the turn, he put on the brakes; that the horses' heads were then over the north rail of the north track; that they continued south about the same speed, and he struck the rear wheel of the hearse when it was on or near the south rail; that the car ran three or four feet after the collision.

The instructions challenged were given at appellee's request, and among them were the following:

"No. 13. If you find from a preponderance of the evidence in this case that those in charge of plaintiff's hearse, when they were in a place of safety and not upon said street car tracks, but to the north thereof, knew that the motorman was not looking in the direction that his car was going but that he was looking away from the direction in which his car was moving, and that while said car was approaching towards plaintiff's hearse that those in charge of said hearse drove same to and upon the track of said street car company immediately in front of said moving car while the motorman was looking in the opposite direction from which the street car was moving, then I instruct you that those in charge of plaintiff's hearse

were guilty of negligence in driving said hearse to and upon the tracks of said street car company when said motorman was looking in the opposite direction from which said street car was moving; *and if you find in this case, from a preponderance of the evidence that those in charge of plaintiff's hearse had time to stop the same before they drove upon the tracks of the defendant company, while the motorman was looking in the opposite direction from which said street car was moving, then and in that event I instruct you that their failure to stop said hearse before they drove same to and upon the track in front of said car was negligence, and if you find said negligence proximately contributed to the injury of plaintiff's property, then your verdict should be for the defendant.''*

"No. 14. All persons driving vehicles in the streets of a city have an equal right with the street car company to drive on that portion of the street occupied by its car tracks, with this limitation,—that where a car and vehicle drawn by animal power are approaching the same place at the same time, then it is the duty of the driver of the animal drawn vehicle to turn out or off the track, or remain off the track, for the reason that the car cannot do so but must remain on and can only travel on the track."

It is insisted by appellee that instruction No. 13 invaded the province of the jury, in that it told the jury that if appellant's hearse "were driven onto the street car track in front of the street car when the motorman in charge thereof was not looking ahead, it should find appellant guilty of negligence." In support of this contention, appellant cites: *Indianapolis Street R. Co.* v. *O'Donnell* (1904), 35 Ind. App. 312,

73 N. E. 163, 74 N. E. 253; *Indianapolis Street R. Co.* v. *Bolin* (1906), 39 Ind. App. 169, 78 N. E. 210; *Indianapolis Street R. Co.* v. *Taylor* (1904), 164 Ind. 155, 72 N. E. 1045; *Indianapolis Traction, etc., Co.* v. *Taylor* (1913), 55 Ind. App. 309, 103 N. E. 812. It is also claimed by appellant that said instruction was inapplicable to the evidence and misleading. The first objection will be first considered.

It is asserted by appellee that said objection or "criticism is not fairly put," that "the instruction tells the jury that if they find that those in charge of the hearse saw and knew that the motorman was not looking while they were still in a place of safety, and that with this knowledge they drove on the street car track *immediately in front* of the moving car, then they would be guilty of negligence," and that such an instruction is correct, citing: *Moran* v. *Leslie* (1903), 33 Ind. App. 80, 70 N. E. 162; *Citizens Street R. Co.* v. *Helvie* (1899), 22 Ind. App. 515, 53 N. E. 191; *DeLon* v. *Kokomo City R. Co.* (1898), 22 Ind. App. 377, 53 N. E. 847.

These cases give little, if any, warrant for the giving of the instruction here involved. While the instruction may be susceptible to the interpretation and meaning indicated, as contended by appellee, the latter portion thereof, which we have italicized *supra,* is likewise susceptible to the interpretation which appellant gives it, viz.: "If while off the track in a place of safety they (appellant's servants) knew that the motorman was not observing ahead and they had time to stop the hearse and did not do so, they were negligent." Under such an interpretation, the instruction entirely takes from the consideration of the jury the questions of the dis-

tance of the hearse from the car when those in charge of the hearse attemptd to cross appellee's tracks, the probability of the motorman performing his duty to look ahead before his car reached the hearse, and the probability of his observing the admitted custom of appellee to give the hearse the right of way. In other words, it took from the jury one of the controlling questions, if not the controlling one, in this case, viz., the right to determine whether appellant's servants, under the special facts and circumstances surrounding them at the time they drove the hearse upon said tracks, as indicated by the issues and evidence set out *supra,* acted as reasonably prudent persons would have acted under the same facts and circumstances. Appellant's servant, Mr. Finn, who was in charge of the funeral, testified that, when they started to cross the track, he knew that the motorman was not looking. They were at that time, according to his statement, 150 feet from the car, and, according to all the evidence, were then in a place of safety, viz., two to eight feet north of appellee's tracks. There can be no doubt but that they might have then stopped the hearse and avoided the collision. It being thus, in effect, admitted by appellant's servants that they were in a place of safety and knew that the motorman on said car was not looking ahead when they first started to cross said tracks, and it being apparent and undisputed that they could then have stopped the hearse and avoided the collision, it follows that, under said instruction, there could be but one finding by the jury, if it gave to such instruction the meaning to which we have indicated the italicized portion thereof rendered it susceptible. In other words, the fact made controlling, in the italicized part of said

instruction, in the determination of the question of contributory negligence was not whether those in charge of appellant's hearse *turned it upon the tracks immediately in front of the street car* at a time when they were in a place of safety and knew the motorman was not looking ahead, but, on the contrary, the fact made controlling in the determination of said question was whether those in charge of said hearse had time to stop it *"before they drove upon the tracks * * * while the motorman was looking in the opposite direction from which said car was moving,"* and, as applied to the undisputed facts indicated *supra,* said part of said instruction was in effect the equivalent of directing a verdict for appellee.

Independent of the admitted custom observed in such cases by appellee, appellant, in the absence of knowledge to the contrary, had the right to

2. assume that those in charge of the car would exercise ordinary care to avoid a collision or injury to them in their use of such street. *In-*

3. *dianapolis Street R. Co.* v. *Bolin, supra.* Ordinary care required the motorman to keep a lookout ahead, and the fact that appellant's servants saw him looking in a different direction when they were 150 feet away from the car, the car then approaching them at the rate of only six to ten miles an hour, would not be sufficient to charge them as a matter of law with contributory negligence simply because they then started across appellee's track. *Indianapolis Street R. Co.* v. *O'Donnell, supra.*

The custom under which appellee admitted that it gave the right of way to funerals furnishes an additional reason why said question of contribu-

4. tory negligence should have been submitted to the jury to be determined by it in the light of

all the facts and circumstances in the case. Indeed, it is manifest from the issues and the evidence, which we have indicated *supra,* that the controverted question in the case was not whether appellant's servants knew that the motorman was not looking ahead at the time they started across said track, but, as before indicated, this was in effect admitted, and the real controversy related to the distance of the hearse from the car at the time it was turned onto appellee's track, and whether, in view of their distance from the approaching car, the speed at which it was approaching and which they were driving, and the custom known to them and relied on at the time they turned across the track, appellant's servants acted as men of ordinary prudence would have acted. These controverted issues are in effect ignored by said instruction, and, under its italicized portion *supra,* the jury was warranted in returning a verdict for appellant, if at the time they started to cross the track they were then in a place of safety and might have stopped the hearse, but proceeded knowing the motorman was not then observing ahead. We think the court, in said instruction, clearly invaded the province of the jury, and, in doing so, may have influenced the jury to appellant's prejudice in the verdict returned.

Instruction No. 14, *supra,* is objected to by appellant on the ground that it is inapplicable to the evidence and omits the elements of the control of 4. the car, the degree of care required to discover the car, and the care required to escape the danger after its discovery. Without entering into a discussion of these several objections to said instruction, we deem it sufficient to say that, assuming that the instruction correctly states the law as appli-

cable generally to the relative rights and duties of persons driving vehicles and those operating street cars in the streets of a city, its giving in the instant case, without any recognition of the admitted custom of appellee to give the right of way to a funeral procession, was likely to mislead the jury rather than aid it in reaching a correct determination of the controverted question in the case.

Other instructions are challenged by appellant, but the conclusion reached as to those considered makes it unnecessary to discuss or pass upon those remaining. They will probably not be given in their present form upon another trial.

For the reasons indicated, the judgment below is reversed, with instructions to the trial court to grant a new trial, and for such other proceedings as may be consistent with this opinion.

NOTE.—Reported in 119 N. E. 528. Street railroads: Question of right of way as between street car and vehicle at point where streets bisect or intersect, note 49 L. R. A. (N. S.) 505; right of driver of vehicle to assume that motorman will give him time to cross track, note 5 L. R. A. (N. S.) 1081; duty and liability of a street railway as to vehicles moving along its tracks, 7 Ann. Cas. 1127; 18 Ann. Cas. 510. See under (1) 38 Cyc 1648; (2) 36 Cyc 1508; (3) 36 Cyc 1550, 1628.