(February 19, 1908.)

## CARRIE PILMER, Administratrix, Appellant, v. BOISE TRACTION CO., LTD., Respondent.

[94 Pac. 432.]

STREET RAILROADS—NONSUIT—EVIDENCE, HOW CONSTRUED—ACCIDENT—INJURY—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY—SPEED OF CAR—CONCLUSIONS FROM EVIDENCE—DIFFERENT CONCLUSION—COURT TO DETERMINE WHEN—JURY WHEN—BURDEN OF PROVING MATTER OF DEFENSE—NEGLIGENCE PER SE—PROXIMATE CAUSE OF INJURY—DUTY OF MOTORMAN—STREET CROSSING—DOCTRINE OF "LAST CLEAR CHANCE"—NEGLIGENCE PROXIMATE AND REMOTE.

1. A motion for a nonsuit admits the truth of plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom, and on such motion the evidence must be interpreted most strongly against the defendant.

2. In an action to recover damages for the injury or death of a person, by reason of being run against and over by a street-car, a motion for a nonsuit at the close of the plaintiff's evidence should not be granted unless the facts presented by the evidence are such that but one conclusion could reasonably be drawn from them, and that conclusion is, that no recovery can be had under the evidence.

3. It is the province of the court to determine that conclusion and grant a nonsuit; but if different minds might reasonably reach different conclusions from such evidence, the motion for a nonsuit should be denied and the case submitted to the jury.

4. In this class of cases the burden of proving contributory negligence is with the defendant.

5. Failure to look and listen before crossing a street-car track at a public street crossing is not, as a matter of law, negligence *per se.*

6. The right and duty of pedestrians and the right and duty of the person in charge of the motive power of a street-car when crossing streets are reciprocal, and each is bound to use equal diligence to avoid collision.

7. Negligence on the part of a person which was not the proximate cause of his injury or death will not be a bar to his recovery.

8. The proximate cause of an event is that which in a natural and continuous sequence, unbroken by a new cause, produces that event, and without which that event would not have occurred.

9. In cases of this kind, the question as to what is the proximate cause of the injury is a question for the jury.

10. *Held,* under the facts of this case, that the question of the proximate cause of the accident should have been submitted to the jury.

11. A street-car should be kept under the reasonable control of the motorman when crossing a street, and persons with or without vehicles, passing over the track at street crossings, may assume that care will be used to reduce the speed at such crossings.

12. A person who has the last clear chance or opportunity of avoiding an accident, notwithstanding the negligence of his opponent, is considered in law solely responsible for such accident.

13. Although the action of the one injured may have been the primary cause of the injury, yet an action for such injury may be maintained if it be shown that the defendant might, by the exercise of reasonable care and diligence, have avoided the consequences of the injured party's negligence.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District for Ada County. Hon. Fremont Wood, Judge.

Action by administratrix to recover damages for the killing of her intestate by a street railway car. Judgment, on motion for a nonsuit, in favor of the defendant. *Reversed.*

Hawley, Puckett & Hawley, for Appellant.

"By a motion for nonsuit the defendant admits the existence of every fact which the evidence tends to prove, or which can be gathered from any reasonable view of the evidence." (*Later v. Haywood,* 12 Ida. 78, 85 Pac. 494.)

"The trial court is bound to submit the case to the jury, unless no recovery could be had upon any view that could be properly taken of the facts which the evidence tends to establish." (1 Thompson on Negligence, 409; 3 Hutchinson on Carriers, sec. 1174; *McAlpine v. Laydon*, 115 Cal. 68, 46 Pac. 865; *Wahlgren v. Market St. Ry. Co.*, 132 Cal. 656, 64 Pac. 993; *Hone v. Mammoth Mining Co.*, 27 Utah, 168, 75 Pac. 381.)

The defendant company was guilty of negligence, in that its motorman did not have his car under that control which the equal rights of pedestrians required. (Nellis on Street Railroad Accident Law, 278; *Roberts v. Spokane St. Ry. Co.*, 23 Wash. 325, 63 Pac. 506; *Mauer v. Brooklyn Heights R. Co.*, 84 N. Y. Supp. 76, 87 App. Div. 119; *Searls v. Elizabeth & C. J. Co.*, 70 N. J. L. 388, 57 Atl. 134; *Sesselman v. Metropolitan St. Ry. Co.*, 78 N. Y. Supp. 482, 483, 76 App. Div. 336.)

"While, generally speaking, one who is about to cross a street railway should both look and listen for cars, this is not an inflexible rule, nor is to be enforced with any such strictness as in the case of an ordinary steam railroad; it is not negligence as a matter of law to attempt to do so." (*Richmond P. & P. Co. v. Gordon*, 102 Va. 498, 46 S. E. 772; *Shea v. St. Paul R. Co.*, 50 Minn. 395, 52 N. W. 902; *Peterson v. Minneapolis R. Co.*, 90 Minn. 52, 95 N. W. 751; *Cincinnati St. R. Co. v. Snell*, 54 Ohio St. 197, 43 N. E. 207, 32 L. R. A. 276; *Read v. Brooklyn R. Co.*, 53 N. Y. Supp. 209, 32 App. Div. 503; *Cons. Traction Co. v. Scott*, 58 N. J. L. 682, 55 Am. St. Rep. 620, 34 Atl. 1094, 33 L. R. A. 122; *Chicago St. Ry. Co. v. O'Donnel*, 208 Ill. 267, 70 N. E. 294; *Cincinnati St. Ry. Co. v. Whitcomb*, 66 Fed. 915, 14 C. C. A. 183; *Robbins v. Springfield R. Co.*, 165 Mass. 30, 42 N. E. 334; *Chauvin v. Detroit R. Co.*, 135 Mich. 85, 97 N. W. 160; *Lane v. Brooklyn R. Co.*, 82 N. Y. Supp. 1057, 85 App. Div. 85; *Marden v. Portsmouth R. Co.*, 100 Me. 41, 109 Am. St. Rep. 476, 60 Atl. 630, 69 L. R. A. 300; *Kansas City etc. R. Co. v. Gallagher*, 68 Kan. 424, 75 Pac. 469, 64 L. R. A. 344; *Campbell v. Los Angeles R. Co.*, 137 Cal. 565, 567, 70 Pac. 624.)

Pilmer had a right to rely on the defendant's controlling its car, and he was not guilty of negligence in passing over the track in front of the car. Failure to look and listen is not negligence *per se.* (*Philbin v. Denver St. Term. Co.,* 36 Colo. 331, 85 Pac. 630; *Finnick v. Boston etc. Co.,* 190 Mass. 382, 77 N. E. 500; *Brozek v. Steinway Co.,* 10 App. Div. 360, 41 N. Y. Supp. 1017; *Walls v. Rochester Co.,* 92 Hun, 581, 36 N. Y. Supp. 1102; *Read v. Brooklyn Heights Co.,* 32 App. Div. 503, 53 N. Y. Supp. 209-211, 32 App. Div. 503; *Newark Pass. Co. v. Block,* 55 N. J. L. 605, 27 Atl. 1067, 22 L. R. A. 374; *Fairbanks v. Bangor R. Co.,* 95 Me. 78, 49 Atl. 421; *Bullman v. Metropolitan Ry. Co.,* 85 N. Y. Supp. 325; *Consolidated Trac. Co. v. Haight,* 59 N. J. L. 577, 30 Atl. 135; *Dennis v. North Jersey Ry. Co.,* 64 N. J. L. 439, 45 Atl. 807; *Garrity v. Detroit Co.,* 120 Mich. 369, 70 N. W. 1018, 37 L. R. A. 529; *Smith v. Minneapolis St. R. Co.,* 95 Minn. 254, 104 N. W. 16, 18; *Chisholm v. Seattle Co.,* 27 Wash. 237, 67 Pac. 601.)

"The duty imposed upon persons crossing steam railway tracks to stop, look and listen is not rigidly applied to persons traveling a street used by a street railway." (*Finnick v. Boston etc. Co.,* 190 Mass. 382, 77 N. E. 500; *Indianapolis St. Ry. Co. v. Schmidt,* 35 Ind. App. 202, 72 N. E. 478, 71 N. E. 663; *Brozek v. Steinway Co.,* 10 App. Div. 360, 41 N. Y. Supp. 1017; *Smith v. Minnesota etc. Ry. Co.,* 95 Minn. 254, 104 N. W. 16; *Kramm v. Stockton etc. Co.,* 3 Cal. App. 606, 86 Pac. 738.)

"The rights of the pedestrian . . . . and of the person in charge of the motive power of a street railway are reciprocal, and each is bound to use equal diligence to avoid a collision." (Nellis on Street Railroad Accident Law, 252; *Zimmerman v. Union etc. Co.,* 38 N. Y. Supp. 362, 3 App. Div. 219.)

Any negligence on the part of plaintiff's intestate, which was not the proximate cause of the injury, will not be a bar to plaintiff's recovery. (*Smithwick v. Hall & Upson Co.,* 59 Conn. 261, 21 Am. St. Rep. 104, 21 Atl. 924, 12 L. R. A. 279, and notes.)

If the defendant had the last clear chance to avoid the accident, it was its duty to do so, and a failure in that regard will subject it to responsibility in damages, regardless of plaintiff's negligence in placing himself in a dangerous position. (*Davies v. Mann,* 10 Mees. & W. 546; *Haley v. Earle,* 30 N. Y. 208; *Trow v. Vermont Co.,* 24 Vt. 487, 58 Am. Dec. 191; *Locke v. First Division etc. R. Co.,* 15 Minn. 350; *Thompson v. Salt Lake R. T. Co.,* 16 Utah, 281, 67 Am. St. Rep. 621, 52 Pac. 92, 40 L. R. A. 172; 1 Shearman & Redfield on Negligence, par. 99; *Aldridge v. St. Louis Trac. Co.,* 101 Mo. App. 77, 74 S. W. 141; *Omaha St. R. Co. v. Larson,* 70 Neb. 591, 97 N. W. 824; *Holden v. Miss. R. Co.,* 177 Mo. 456, 76 S. W. 973; *Hanheide v. St. Louis Transit Co.,* 104 Mo. App. 323, 78 S. W. 820; *Metropolitan St. R. Co. v. Arnold,* 67 Kan. 260, 72 Pac. 857; *Kolb v. St. Louis Transit Co.,* 102 Mo. App. 143, 76 S. W. 1050; *Kansas City etc. Co. v. Gallagher,* 68 Kan. 424, 75 Pac. 469, 64 L. R. A. 344; *Galveston etc. Co. v. Hanna,* 34 Tex. Civ. App. 608, 79 S. W. 639; *Degel v. St. Louis T. Co.,* 101 Mo. App. 56, 74 S. W. 156; *Shanks v. Springfield etc. Co.,* 101 Mo. App. 702, 74 S. W. 386; *Orr v. Cedar Rapids etc. Co.,* 94 Iowa, 423, 62 N. W. 851; *Bogan v. Caroline etc. R. Co.,* 129 N. C. 154, 39 S. E. 808, 55 L. R. A. 418; *Harrington v. Los Angeles R. Co.,* 140 Cal. 514, 98 Am. St. Rep. 85, 74 Pac. 15; *Lee v. Market St. R. Co.,* 135 Cal. 293, 67 Pac. 765; *Walls v. Rochester Ry. Co.,* 92 Hun. 581, 36 N. Y. Supp. 1102; *Philbin v. Denver etc. Co.,* 36 Colo. 331, 85 Pac. 630; *South Chicago Co. v. Kinnare,* 216 Ill. 451, 75 N. E. 179; *Chicago City Ry. Co. v. Hyndshaw,* 116 Ill. App. 367; *Indianapolis Co. v. Bolin,* 39 Ind. App. 169, 78 N. E. 210; *Deitring v. St. Louis Co.,* 109 Mo. App. 524, 85 S. W. 140; *Turnbull v. New Orleans Co.,* 120 Fed. 783, 57 C. C. A. 151; *Goff v. St. Louis Tran. Co.,* 199 Mo. 694, 98 S. W. 49, 9 L. R. A., N. S., 244; *Richmond Co. v. Martin,* 102 Va. 209, 45 S. E. 886.)

Borah, Cavanah & Blake, for Respondent.

Notwithstanding the negligence of the defendant, yet if the negligence of the plaintiff had to do with the matter he

cannot recover. (*Rumpel v. Oregon S. L. Co.*, 4 Ida. 13, 35 Pac. 200; *Holt v. Spokane etc. Ry. Co.*, 4 Ida. 443, 40 Pac. 56; *Minty v. Union Pac. Co.*, 2 Ida. 471, 21 Pac. 660, 4 L. R. A. 409; *Haner v. Northern Pac. Co.*, 7 Ida. 305, 62 Pac. 1028; *Helber v. Spokane St. Ry. Co.*, 22 Wash. 319, 61 Pac. 40; *Carson v. Federal St. Ry. Co.*, 147 Pa. St. 219, 30 Am. St. Rep. 727, 23 Atl. 369, 15 L. R. A. 257; *McGee v. Consolidated St. Ry. Co.*, 102 Mich. 107, 47 Am. St. Rep. 507, 26 L. R. A. 300, 60 N. W. 293; *Haight v. New York Cent. R. R. Co.*, 7 Lans. (N. Y.) 11; *Marland v. Pittsburgh etc. Co.*, 123 Pa. St. 487, 10 Am. St. Rep. 541, 16 Atl. 623; *Pennsylvania Co. v. Bell*, 122 Pa. St. 58, 15 Atl. 561; *Creamer v. West End St. Ry. Co.*, 156 Mass. 320, 32 Am. St. Rep. 456, 31 N. E. 391, 16 L. R. A. 490; *Wolf v. City etc. Ry. Co.*, 45 Or. 446, 72 Pac. 329; *Sego v. Southern Pac. Co.*, 137 Cal. 405, 70 Pac. 279; *Glasscock v. Central Pac. R. Co.*, 73 Cal. 137, 14 Pac. 520; *Smith v. City etc. Ry. Co.*, 29 Or. 539, 46 Pac. 136; *Cawley v. La Crosse City Ry. Co.*, 101 Wis. 145, 77 N. W. 179; *Burke v. New York Cent. R. Co.*, 25 N. Y. Supp. 1009; *Schneider v. Chicago etc. Ry. Co.*, 99 Wis. 378, 75 N. W. 169; *Young v. Citizens' etc. Co.*, 148 Ind. 54, 44 N. E. 927; *Cones v. Cincinnati etc. Ry. Co.*, 114 Ind. 328, 16 N. E. 638; *Blaney v. Electric Trac. Co.*, 184 Pa. St. 524, 39 Atl. 294; *Haslan v. Morris etc. R. Co.*, 33 N. J. L. 147; *Moore v. Lindell Ry. Co.*, 176 Mo. 528, 75 S. W. 672; *Burns v. Metropolitan St. Ry. Co.*, 66 Kan. 188, 71 Pac. 244; *Everett v. Los Angeles etc. Ry. Co.*, 115 Cal. 105, 43 Pac. 207, 34 L. R. A. 356; 1 Nellis on Street Railroad Accident Law, 257, 258, 339, 340; *Farrar v. New Orleans etc. Co.*, 52 La. Ann. 417, 26 South. 995; *Watson v. Mound City etc. Ry. Co.*, 133 Mo. 246, 34 S. W. 573; *Wilman v. People's Ry. Co.*, 4 Penn. (Del.) 260, 55 Atl. 333; *Price v. Charles Warner Co.*, 1 Penn. (Del.) 462, 42 Atl. 699; *Kappus v. Metropolitan St. Ry. Co.*, 81 N. Y. Supp. 443, 82 App. Div. 13; *Stabenau v. Atlantic etc. Co.*, 155 N. Y. 511, 63 Am. St. Rep. 698, 50 N. E. 277; *Bittner v. Crosstown St. Ry. Co.*, 153 N. Y. 76, 60 Am. St. Rep. 588, 46 N. E. 1044; *Henderson v. Detroit etc. Ry. Co.*, 116 Mich. 368, 74 N. W. 525; *Borschall v. Detroit Ry.*

*Co.*, 115 Mich. 473, 73 N. W. 551; *McClellan v. Chippewa etc.
Ry. Co.*, 110 Wis. 326, 85 N. W. 1018.)

The fact that a person is infirm or has a defective hearing
or sight devolves upon such person the duty of using greater
care and caution than otherwise he would have to. (*Hall
v. West End St. Ry. Co.*, 168 Mass. 461, 47 N. E. 124; *Nein
v. La Crosse City Ry. Co.*, 92 Fed. 85, 34 C. C. A. 224; *Caw-
ley v. La Crosse City Ry. Co.*, 106 Wis. 239, 82 N. W. 197;
*Maloy v. Wabash etc. Ry. Co.*, 84 Mo. 275; *Zimmerman v.
Hannibal etc. Ry. Co.*, 71 Mo. 491; *Aldrich v. St. Louis
Transit Co.*, 101 Mo. App. 77, 74 S. W. 141; *Garbanati v.
City of Durango*, 30 Colo. 358, 70 Pac. 686; *Thompson v.
Salt Lake etc. Co.*, 16 Utah, 281, 67 Am. St. Rep. 621, 52
Pac. 92, 40 L. R. A. 72; Nellis on Street Railroad Accident
Law, 419, 420; *West v. New Jersey etc. Co.*, 32 N. J. L. 91;
*Elkins v. Boston etc. Co.*, 115 Mass. 190; *Shanks v. Spring-
field etc. Co.*, 101 Mo. App. 702, 74 S. W. 386.)

The rule that the negligence of the plaintiff will not pre-
vent his recovery if, notwithstanding such negligence, the
injury could have been avoided with the exercise of ordinary
care on the part of the defendant never applies where both
parties are contemporaneously in fault. (*Holmes v. South.
Pac. etc. Co.*, 97 Cal. 161, 31 Pac. 835; *O'Brien v. McGlinchy*,
68 Me. 552; 2 Thompson on Negligence, 1157; *Murphy v.
Deane*, 101 Mass. 455, 3 Am. Rep. 390; *Holwerson v. St. Louis
etc. Ry. Co.*, 157 Mo. 216, 57 S. W. 770, 50 L. R. A. 850;
*Kirtley v. Chicago etc. Ry. Co.*, 65 Fed. 390, 391; *Missouri
Pac. Co. v. Moseley*, 57 Fed. 926, 6 C. C. A. 641.)

SULLIVAN, J.—This action was brought by the plaintiff
as administratrix of the estate of John Pilmer, deceased, to
recover damages against the respondent for the death of said
Pilmer, alleging that his death was caused by the fault, neg-
ligence and carelessness of the defendant, and without any
fault or negligence of the deceased. The answer puts in issue
the material allegations of the complaint and pleads affirma-
tively facts tending to show that the respondent was without
fault, and that the negligence of the deceased was the cause

of his death. The cause was tried by the court and a jury and at the close of the testimony on the part of the plaintiff a motion for a nonsuit was sustained and judgment of dismissal entered, from which judgment this appeal was taken. The following quotation from the judgment clearly shows the grounds of the motion and the points on which the judgment of nonsuit was granted, to wit:

"Upon the close of the testimony upon the part of the plaintiff, the defense through its counsel moved for nonsuit upon the ground that there was no evidence for the consideration of the jury; that the evidence in the case affirmatively disclosed that the deceased was guilty of contributory negligence, and further that the evidence failed to show that the deceased was without fault and without contributory negligence at the time of receiving the injury complained of."

The granting of said motion is assigned as error.

Counsel for appellant contend for the rule that the respondent company was bound to prevent injury to deceased at a street intersection by keeping its car under control and by using every reasonable opportunity for preventing the injury after the peril of the deceased was discovered, regardless of the negligence of the deceased. Counsel for appellant admit contributory negligence on the part of the intestate, if the proximate cause of the accident would relieve the respondent from liability, but contend that the question of whether or not there was such contributory negligence was a matter for determination by the jury under proper instructions, and that even if contributory negligence were shown, yet if the defendant had a clear chance to save intestate's life and did not make the most of his opportunity, then the defendant is responsible for the injuries which followed. And whether such a clear chance existed is a matter solely for the jury to determine. That, we think, is a clear statement of the contentions on behalf of the appellant.

It appears from the evidence that the deceased was about fifty-eight years of age, that he was quite deaf, and blind in the left eye. These facts were known to the motorman, McEvoy, who had charge of the car in that capacity on the morn-

ing of July 8, 1905, when the accident occurred. McEvoy testified for the plaintiff on the trial and testified that just before the accident he saw Mr. Pilmer and recognized him. He also testified that he was acquainted with the car and familiar with its brakes, machinery, etc., and that there was neither sand-box nor any air-brakes on the car; that there was a light trip fender that can be handled by the motorman with his foot; that when you trip the fender, it falls right on the rails, and that such fender is usually carried about six inches above the rails. He also testified that he saw the deceased on the day the accident occurred, about a quarter of a block away, and recognized him at that time, and that at the rate the car was going that morning, just before the accident, he could stop the car in about fifty or sixty feet; that when he first saw the deceased, he was out in the street a quarter of a block away from the track, going down Brumback street; that he did not think the car was running over four miles an hour at that time.

Another witness testified that on the morning of the accident he was standing about seventy-five feet southwest of the street crossing and could clearly see the crossing and the ground just north of it; that he saw the deceased when he was just stepping on the track.. He was about thirty-five or forty feet from the car at that time; that witness was looking toward the car and heard the bell ring; that when he first saw the car, the motorman was trying to apply the brakes and the car was going at the usual rate of speed; that he noticed the fender on the car; that it was eight or nine inches above the track before or just as it struck the deceased. Witness did not observe any cessation or marked stoppage of the car from the time he first saw it until it struck the deceased. When witness looked up, deceased was just stepping upon the track. When the car hit him, he had one foot inside the track and one foot outside the track on the opposite side from where he started to cross it. The deceased was looking straight ahead with his head inclined a little to the ground. On cross-examination, the witness testified that the deceased was just stepping on the track when he first saw him, and the car was

thirty or forty feet away from him; that he stepped on the track just in front of the car; that the deceased was leading a horse and had gotten across the track when the accident occurred, so that he had one foot on the inside of the track and the horse was just about to step on the west side of the track. The deceased was leading the horse by a rope or strap; did not know whether the car struck the horse, but when the horse jerked back, he threw the deceased down with his face to the east, and when he pulled him around, his face was to the east; that the horse jerked the deceased down before the car struck him. This all happened in about a moment. The fender hit the deceased when he was lying crosswise of the track and hit the body about eight or nine inches high. The deceased was looking straight ahead with his head slightly inclined to the ground. He did not have his face turned toward the car until he was thrown upon the ground.

Another witness testified that on the morning of July 8, 1905, he was on a street-car of the defendant company; the car was going south on Eighteenth street; that he could see out of the front of the car and observed the deceased; his attention was called by the loud ringing of the gong, and looking up he saw the deceased leading a horse going east on Brumback street, about two or three rods away; he was at that time about eight feet from the track; he was looking down, apparently not knowing that there was any danger near or any car around. He was walking toward the track from the west with the horse slightly behind him. It was just a few seconds after the gong rang before the witness looked up and the car was then about three rods from the deceased and he was a few feet from the track; that the car was going at a speed faster than an ordinary horse trots; that the view of the street was practically unobstructed and clear; that he could see deceased plainly from the rear of the car and there was no obstruction to prevent the motorman from seeing him; that he did not observe any slacking of the speed of the car until just before it struck deceased, then witness could feel there was a trifle slacking of the speed. Witness went to get off the car, but on account of the speed could

not do so until the car struck deceased. When deceased passed out of witness' vision in front of the car, he was about the length of the car, perhaps sixteen or eighteen feet, from the deceased; that the rope with which the deceased was leading the horse was in his left hand. Did not remember at any time of hearing any grinding noise similar to iron upon iron; that as soon as witness dared after the collision, he stepped off the car and ran to see if he could be of any assistance to the deceased; that the effect of witness stepping off the car was that he had to brace himself—catch himself to keep from falling; that the car was going lively, and that it was not quite stopped when he reached its front; that the deceased was carried at least fifty or sixty feet after he was struck; that the front of the car, when it stopped, was down past the south side of Brumback street from thirty to forty feet. The deceased was struck just a little south of the middle of Brumback street at the crossing. The deceased was carried by the car from the time it struck him. On cross-examination this witness testified that the deceased was coming directly facing the track, the car being off to his left, and as the car approached within a few feet of Brumback street, it would practically be within the line of deceased's vision; that the deceased could have seen the car had he looked up; that this accident occurred between half-past 8 and 9 o'clock in the morning on a bright, sunshiny day.

Another witness testified that he did not know what occurred from the time the car struck deceased until he fell in front of the fender; that the fender of the car was shoving deceased along the track, rolling him over and over, possibly twenty or twenty-five feet, before the fender came up, then the deceased passed back against the guard-rail in front of the wheel, and then shoved him possibly fifteen or twenty feet, when the car stopped.

The record contains other evidence tending, at least, to show that the motorman did not have his car under proper control just before and at the time the accident occurred, and that the negligence of the deceased (if there was any) was not the proximate cause of the accident.

A nonsuit was granted at the close of the plaintiff's testimony, on motion of the defendant, and as held by this court in *Later v. Haywood,* 12 Ida. 78, 85 Pac. 494, the defendant must be deemed to have admitted all the facts of which there is any evidence, with the facts which the evidence tends to prove. (See, also, *Kramm v. Stockton Electric R. Co.,* 3 Cal. App. 606, 86 Pac. 738, 903.)

The trial court did not err in granting the nonsuit if the facts presented by the evidence are such that but one conclusion could reasonably be drawn from them, and that conclusion is that no recovery can be had under the evidence. Then in that case it was the province of the court to determine that conclusion. But if different minds might reasonably reach different conclusions from the evidence, the motion for a nonsuit should have been denied and the case submitted to the jury. We are satisfied that different minds might reasonably reach different conclusions from the evidence as to whether the negligence of the deceased was the proximate cause of the accident, or whether the carelessness or negligence of the motorman was such cause. That being true, the court erred in granting the nonsuit.

But it is contended by counsel for respondent that as the plaintiff under her pleadings failed to show that the defendant was without fault or negligence, the motion for a nonsuit was properly sustained, and it is further contended that the facts disclosed by the evidence show affirmatively contributory negligence on the part of the deceased. This court held in *Adams v. Bunker Hill & S. M. Co.,* 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844, that a nonsuit should only be granted when the evidence wholly fails to support the demand of plaintiff, and that in an action against the master for damages caused by the death of the servant, as a result of the master's negligence, the presumption which arises in favor of the instincts of self-preservation and the known disposition of men to avoid injury and personal harm to themselves, constitute a *prima facie* inference that the servant was at the time in the exercise of ordinary care and was himself free from contributory negligence, and that in such case the

burden of proving contributory negligence rested on the defendant. This is the correct rule and is fully sustained by the decided weight of the adjudicated cases. (*Dearden v. San Pedro etc. R. Co.* (Utah), 93 Pac. 271.) This rule of law prevailed in this state prior to the act approved March 13, 1907. (Sess. Laws 1907, 323.)

It is contended by counsel for respondent that the intestate's death occurred by reason of his own negligence, and that for that reason the court did not err in granting a nonsuit, and that the real question presented is whether the failure to stop, look and listen for an approaching street-car was negligence *per se* on the part of the deceased. In a city, a pedestrian has a right to rely on the motorman using due care in managing his car, and due care means having it under such control as occasion demands at a street intersection where people and vehicles are crossing. In the case of *Richmond P. & P. Co. v. Gordon*, 102 Va. 498, 46 S. E. 772, the following instruction was held to be a correct statement of the law:

"While, generally speaking, one who is about to cross a street railway should both look and listen for cars, this is not an inflexible rule, nor is it to be enforced with any such strictness as in case of an ordinary steam railway; it is not negligence as a matter of law to omit to do so. The question is whether men of ordinary prudence, exercising ordinary care and prudence, would have thought it unnecessary to do so."

(*Shea v. St. Paul R. Co.*, 50 Minn. 395, 52 N. W. 902; *Chauvin v. Detroit R. Co.*, 135 Mich. 85, 97 N. W. 160; *Marden v. Portsmouth Ry. Co.*, 100 Me. 41, 109 Am. St. Rep. 476, 69 L. R. A. 300, 60 Atl. 530.) In the last-cited case, the court said:

"While it may be found, as a matter of fact, in any action involving an accident by crossing in front of an electric car, that it was the duty of the person undertaking to so cross to look and listen, it cannot be laid down as a rule of law that a failure to do this does, *per se*, constitute negligence."

And on page 304 of 69 L. R. A. of that decision, the court said:

"The duty imposed upon street-cars when approaching public street crossings also clearly shows that the same rule with respect to such crossings cannot be invoked for both steam and electric cars. The very fact that the law, as far as we have been able to discover, almost universally holds that, upon the approach of public street crossings, the rights of street-cars and vehicles are equal, and that neither has a paramount right over the other, necessarily modifies the rule applicable to the approach of steam-car crossings. . . . . And it is proper here to observe that the decisions impose a special duty upon cars operated in the streets when approaching street crossings, a duty which, instead of clothing them with the paramount rights conceded between crossings, places them upon an equal footing with other vehicles rightfully occupying the streets."

In Nellis on Street Railroad Accident Law, page 252, it is said:

"At the intersection of two streets, a pedestrian . . . . has the right to cross the tracks of a street surface railroad, notwithstanding a car is within sight, provided there is a reasonable opportunity to do so without obstructing the passage of the car unnecessarily; and if, for that purpose, it is necessary for the person having charge of the motive power of the car to check the speed, or even to entirely stop the car for a short period, it is his duty to do so, and the person crossing the track has the right, without being necessarily chargeable with contributory negligence, to assume that that duty will be performed; the rights of the pedestrian . . . . and of the person in charge of the motive power of such car under these circumstances, are reciprocal, and each is bound to use equal diligence to avoid a collision."

We think it is well settled that any negligence on the part of the intestate which was not the proximate cause of his death will not be a bar to the plaintiff's recovery. In *Smith-wick v. Hall*, 59 Conn. 269, 21 Am. St. Rep. 104, 21 Atl. 924, 12 L. R. A. 279, it is held that the negligent act or omission, to constitute contributory negligence, must appear as a proximate cause of the injury, or one of the proximate causes, and

not merely as a condition.   In vol. 6, p. 5760, of Words and Phrases, it is stated:

"The proximate cause of an event must be understood to be that which in a natural and continuous sequence, unbroken by a new cause, produces that event and without which that event would not have occurred."

The term "proximate cause" is defined in *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S. 469, 24 L. ed. 256, and the court said: "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury." Measuring the facts as disclosed by the record in this case by the rules of law above referred to, we find the intestate approaching a street-car track, negligent, perhaps, in that he goes upon the track without listening or looking for an approaching car. The question then arises whether such negligence is the proximate cause of his death by collision with the car, when the evidence at least indicates that the motorman did not have his car under control when he approached the street crossing and did not, to any perceptible degree, check its speed, when it was going faster than an ordinary horse trots, as testified by one of the witnesses; when the motorman saw the deceased a quarter of a block away, who he knew was hard of hearing and blind in his left eye, which was the eye next to the approaching car, and deceased traveling toward the track in such a manner as to indicate clearly his intention to cross it, and so near the track that in case he walked thereon the car would strike him, without getting his car under control, and failed, after perceiving that the collision was inevitable, to lower the fender upon his car, which was placed there for taking up objects on the track, and which might, if lowered, have picked up the body of the deceased and prevented it from going under the car, and thus prevented his serious injury.

Under those facts, what was the proximate cause of intestate's death? That was a question for the jury to answer. That is not a question of science or legal knowledge, and it was one to be determined by the jury from the evidence. From the evidence contained in the record, we think that two

fair minds might reasonably arrive at different conclusions as to the proximate cause of the accident. One might conclude that the negligence of the motorman in failing to have his car under control at said street crossing, and his failure to lower the fender after it appeared that the intestate was going on the track, was the proximate cause of the accident, and the other, that it was not. It is true, the deceased was on the track, and if he had not been there, he would not have been injured; but that was a condition and not the direct cause of the injury, as in any case of an accident such accident would not have occurred if the one injured had not been present. We think the correct view of this case is that if the negligence of the intestate could have been avoided, after it was perceived by the motorman, then his negligence was not the direct or proximate cause of the accident, but such direct or proximate cause was the neglect or failure of the motorman to avoid it, if it were reasonably possible for him to do so. The motorman knew the physical infirmities of the deceased. The evidence shows his ability to stop the car in fifty feet, and the evidence shows that the car ran about that distance after it struck the deceased. The motorman also failed to operate the fender, which perhaps would have prevented any serious accident had he done so. The contributory negligence which must exist to bar a recovery in this class of cases must concur with the negligence of the defendant in such a way that the latter is not alone the immediate or proximate cause of the accident. If, however, the deceased's negligence only placed him in a dangerous situation, out of which he would have come with safety and without injury had it not been for the subsequent negligence of the defendant, then there is no such concurring negligence as will exonerate the defendant. The rule of making it negligence *per se* to fail to stop and listen at a steam railway crossing, is not the prevailing rule in regard to street railway crossings. (*Philbin v. Denver Tramway* Co., 36 Colo. 331, 85 Pac. 630; *Finnick v. Boston etc. Ry.*, 190 Mass. 382, 77 N. E. 500; *Indianapolis etc. Co. v. Schmidt*, 35 Ind. App. 202, 72 N. E. 478; *Brozek*

*v. Steinway Ry. Co.*, 10 App. Div. 360, 41 N. Y. Supp. 1017;
*Smith v. Minn. St. Ry. Co.*, 95 Minn. 254, 104 N. W. 16;
*Kramm v. Stockton etc. Co.*, 3 Cal. App. 606, 86 Pac. 738.)

It is the duty of motormen on street railways to have
their cars under control when crossing streets over which
people travel. The motorman should not expect to run his
car at the same rate of speed across streets as he may along
other places where there are no streets crossing his line of
road. A trolley car should be under the reasonable control
of the motorman, and persons with vehicles passing over the
railroad track and street crossings may assume that care
will be used to reduce the speed of cars, when at a sufficient
distance from a passing team or person, so as to enable such
team or person to get out of the way.

Counsel for appellant insists that this court adopt the
doctrine of the "Last Clear Chance" as laid down in *In-
dianapolis St. Ry. Co. v. Bolin*, 39 Ind. App. 169, 78 N. E.
210, and in many other cases cited by him. In the Indianapo-
lis St. Ry. Co. case, the court referred to it as:

"The 'last clear chance,' a doctrine firmly established on
both principal and authority," and said: "Except for it, the
greater the original negligence of a defendant and the more
gross its delinquency, the less likelihood of a recovery against
it on account of injury thereby caused. It serves the broadest
principles of public policy. The state is interested, not alone
that justice be done in a given instance, but that the law be so
declared as that it will tend to the security of life and limb.
The government is dependent upon its citizenship, not only
politically, but economically, and high as the duty which de-
volves upon the courts of protecting acquired rights of prop-
erty is, it is subordinate to the one which has as its object
the uninterrupted enjoyment of that personal security which
is incident to human existence, and in which every indi-
vidual is entitled to the fullest protection which society can
give. And therefore the language of the supreme court of
Indiana, which follows: 'It is now perfectly well settled that
the plaintiff may recover damages for an injury caused by the
defendant's negligence, notwithstanding the plaintiff's own

negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort in which this rule is longer disputed.' (*Southern Ind. R. Co. v. Fine,* 163 Ind. 617, 72 N. E. 589-592.)''

The origin of the doctrine of the ''Last Clear Chance'' is generally attributed to the case of *Davies v. Mann,* 10 Mees. & W. (Eng.) 546, in which the owner of a donkey, who negligently turned it out on the highway with its feet hobbled, was allowed, notwithstanding his own negligence, to recover from a person driving along the highway who carelessly ran into and killed it. It is stated in the note to the case of *Bogan v. Carolina C. R. Co.,* 129 N. C. 154, 39 S. E. 808, 55 L. R. A. 418, that the doctrine of the donkey case and the ground of its decision have been accurately stated by a writer in the Quarterly Law Review, vol. 2, 507, as follows: ''The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it.''

The United States supreme court in *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 480, 12 Sup. Ct. 679, 36 L. ed. 485, thus lays down the doctrine of contributory negligence as modified by that of the ''Last Clear Chance'':

''Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years. (having been first enunciated in *Davies v. Mann,* 10 Mees. & W. (Eng.) 546) that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.''

This court is in full accord with the doctrine of the "Last Clear Chance" as above defined. The deceased had a right to travel on said street. He had a right to rely on the defendant's controlling its car. We refer to the following cases on the point that failure to look and listen is not negligence *per se: Philbin v. Denver Tramway Co.,* 36 Colo. 331, 85 Pac. 630; *Finnick v. Boston etc. Co.,* 190 Mass. 382, 77 N. E. 500; *Brozek v. Steinway Co.,* 10 App. Div. 360, 41 N. Y. Supp. 1017. In the last-cited case it is held:

That "negligence and contributory negligence are questions for the jury where a person, in the daytime, attempted to drive a vehicle across a track, forty or fifty feet in front of an electric car which was approaching at the rate of eight to ten miles an hour and was injured by the car."

(*Walls v. Rochester Ry. Co.,* 92 Hun, 581, 36 N. Y. Supp. 1102; *Read v. Brooklyn Heights Co.,* 32 App. Div. 503, 53 N. Y. Supp. 209; *Newark Passenger R. Co. v. Bloch,* 55 N. J. L. 605, 27 Atl. 1067, 22 L. R. A. 374; *Fairbanks v. Bangor etc. Co.,* 95 Me. 78, 49 Atl. 421.) In the last above cited case, the court said:

"There is no absolute rule of law requiring a traveler to look and listen before crossing the track of an electric railway in a public highway. . . . . Whether a failure of a traveler about to cross a railway track to look or listen amounts to negligence, must be determined from all the facts and circumstances proved."

(*Bullman v. Metropolitan St. Ry. Co.,* 85 N. Y. Supp. 325; *Consolidated Traction Co. v. Haight,* 59 N. J. L. 577, 37 Atl. 135.) The last above cited case contains this statement:

"It is not, under all circumstances, negligence *per se* not to look and listen before crossing a trolley track." (*Dennis v. North Jersey R. Co.,* 64 N. J. L. 439, 45 Atl. 807.) The syllabus in the above case is as follows:

"The principle of law is now well established, and must be applied, that it is not negligence *per se,* or negligence in law, for a person driving a vehicle, in approaching a street crossing over which he intends to cross, to fail to look for an approaching street-car, in order to avoid danger from it. The

question whether he was negligent or not must be submitted to the jury, for them to determine as a question of fact."

(*Garrity v. Detroit etc. Co.*, 112 Mich. 369, 70 N. W. 1018, 37 L. R. A. 529; *Smith v. Minneapolis St. Ry. Co.*, 95 Minn. 254, 104 N. W. 16.) In the last-cited case, the court says:

"Indeed, a traveler at a crossing may obtain the right of way over the street crossing where, in the reasonable exercise of his rights, he reaches the point of crossing in time to go safely upon the track in advance of an approaching car; the latter being sufficiently distant to be checked or stopped, if need be, in the exercise of due care."

(*Chisholm v. Seattle Co.*, 27 Wash. 237, 67 Pac. 601.) The syllabus in that case says: "One about to cross a street-car track is not bound to look and listen, in order to be free from negligence."

*Kramm v. Stockton E. R. Co.*, 3 Cal. App. 606, 86 Pac. 738, 903, is a late California case that is similar in some respects to the case at bar. On page 741 of that case it is said:

"There was evidence, whether true or untrue it is not our province to judge, that the motorman saw deceased in his perilous position when far enough away from him to have stopped the car before reaching him, or at least to have so reduced its speed as to have caused less injury; and there is evidence, which we must receive, that the motorman did not attempt to check the momentum of his car until the very instant—one witness testified simultaneously—the car struck the deceased. . . . . Without further noticing the evidence or further comment, in our judgment, the case should have gone to the jury, because, among other reasons, the jury as presumably 'sensible and impartial' men might have decided that the deceased exercised ordinary care (*Herbert v. Southern Pacific Co.*, 121 Cal. 227, 53 Pac. 651), or that the motorman 'had the last clear opportunity to avoid the injury,' in which case it was his duty to have done so."

In *Thompson v. Salt Lake R. T. Co.*, 16 Utah, 281, 67 Am. St. Rep. 621, 52 Pac. 92, 40 L. R. A. 172, among other things the court said:

"Both parties being negligent, the true rule is held to be that the party who last had a clear opportunity to avoid the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it." (See, also, 1 Shearman & Redfield on Negligence, sec. 99.) There are many other authorities to the same effect and it is useless for us to make further citations.

Where a street railroad company is authorized to operate its cars in a city, both the company and those traveling on the streets, on foot or in vehicles, are required to use the streets at all times with just regard to the rights of others. And a traveler on the streets has a right to assume that the car company will exercise ordinary care and diligence to prevent a collision. (*Indianapolis St. Ry. Co. v. Bolin,* 39 Ind. App. 169, 78 N. E. 210.)

The negligence of the deceased, if the jury should find that there was such negligence, becomes remote if it should be found that the motorman could have prevented the accident by having his car under proper control at said street crossing, or by lowering the fender on the car he could have prevented the serious consequences of the accident. The street-car company owes a duty to the pedestrian, and must run its cars with due care in order to avoid doing him injury. While we regard rapid transit as indispensable in this rushing age, we do not esteem it of greater value than life and limb, and it must be conducted with due care for the rights of others. Justice and humanity will not countenance the doctrine that a street railway company may, without liability, run down and maim or kill a human being who may have carelessly placed himself, unconsciously or otherwise, in a position to be injured or killed, simply because he was careless or negligent in placing himself in such position.

The question whether the negligence or want of due care on the part of the respondent was the proximate cause of the accident ought to have been submitted to the jury with all other questions of fact arising in the case, under proper instructions. The court therefore erred in granting a nonsuit. The judgment is reversed, a new trial granted, and the cause

remanded for further proceedings in accordance with the views herein expressed.   Costs are awarded to appellant.

Ailshie, C. J., and Stewart, J., concur.